WADE E. MOORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VERN FORCUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLARENCE B. FORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1050, 1051, 1052.   Promulgated November 29, 1946.

*Benjamin Grund, C. P. A.*, and *Maxwell Wexler, C. P. A.*, for the petitioners.

*Frank M. Thompson, Jr., Esq.*, and *S. Earl Heilman, Esq.*, for the respondent.

TYSON, *Judge*: These consolidated proceedings involve the following income tax deficiencies determined by respondent and overpayments alleged by petitioners:

| Taxpayer | Deficiencies | | Alleged over-payments for year 1941 |
| --- | --- | --- | --- |
| | Year 1940 | Year 1941 | |
| Wade E. Moore | $782.24 | $49,147.45 | $25,000 |
| Vern Forcum | 831.12 | 18,198.70 | 50,000 |
| Clarence B. Ford | 793.97 | 58,511.83 | 20,000 |

In each of the three proceedings ultimate issues presented are (1) whether the respondent correctly determined the net income of the partnership of Forcum-James Construction Co., and, as a necessary consequence, the partners' distributive shares thereof for the years 1940 and 1941, and this issue involves, in turn, subsidiary questions as to the correct net income of certain subpartnerships; (2) whether the respondent correctly determined the percentage of partnership interest owned by each petitioner in the Forcum-James Construction Co. during 1941, and this issue involves, in turn, the question of whether each petitioner's purported transfer of a portion of his partnership interest to members of his family is to be recognized for Federal tax purposes; (3) whether respondent correctly included in each petitioner's taxable income for 1941 a certain amount as a dividend from the Forcum-James Co., a Tennessee corporation. In the proceedings in Wade E. Moore and C. B. Ford there is also the alternative issue presented whether, if certain transfers in trust by those petitioners are not recognized for tax purposes, each such petitioner is entitled to

deduct fees paid the trustees, as an ordinary and necessary business expense.

An assignment of error as to respondent's disallowance of a deduction of $18,116.64 claimed by the Pioneer Contracting Co. for equipment rental expense in 1941 was abandoned by petitioners.

By stipulation of the parties at the hearing and as to each of these consolidated proceedings, the respondent made claim for the amount of any increase in deficiency over that shown in the deficiency notice for 1941 which may be shown to be due under Rule 50 recomputation, if the Court sustains either, both, or one or the other of his determinations designated (a) and (b) in his deficiency notices, which as to each petitioner stated the following:

(a) The Forcum-James Company, a corporation of which you are a stockholder, distributed through Forcum-James Construction Company, a partnership in which you are a partner, the amount of $500,000.00. It has been determined that the amount distributed represented a preferential distribution of the earnings and profits of the corporation to its shareholders and this amount represents your taxable share thereof. [i. e., includible as a dividend, $69,210.54]. [Brackets supplied.]

(b) Your share of the distributive net income of the partnership, Forcum-James Contsruction Company, which is includible in your return, has been adjusted as follows: [i. e., correct amount includible, $60,191.69]. [Brackets supplied.]

In view of the numerous questions involved in the issues as stated, we first set forth findings of general facts pertinent to all or most of the issues and subsidiary questions and then as to each such question or issue we set forth separate findings of fact particularly applicable thereto and our opinion thereon.

### FINDINGS OF GENERAL FACTS.

Each of the three petitioners is a citizen of the United States and a resident of Dyersburg, Tennessee, and for the calendar years 1940 and 1941 each filed his tax returns on a cash basis, with the collector of internal revenue at Nashville, Tennessee.

Each petitioner filed, on March 6, 1945, with the same collector, a claim for refund in the amount above set forth as alleged overpayments. The petition in each of these proceedings was filed on March 23, 1943.

Throughout the year 1940 each of the three petitioners owned a 25 per cent interest in a partnership known as the Forcum-James Construction Co. of Dyersburg, Tennessee (hereinafter referred to as Construction Co.), which was engaged in the contracting business. The remaining 25 per cent interest was owned by R. M. Ford.

Throughout the years 1940 and 1941 Construction Co. owned a 50 per cent interest in the Pioneer Contracting Co. of Dyersburg, Tenn-

essee (hereinafter referred to as Pioneer), a partnership engaged principally in the contracting business and also in farm operations. Throughout 1941 Construction Co. owned a 50 per cent interest in the partnership of W. R. Aldrich & Co., Baton Rouge, Louisiana (hereinafter referred to as Aldrich), and the partnership of L. O. Brayton & Co., Dyersburg, Tennessee (hereinafter referred to as Brayton), both of which were engaged in the contracting business.

Each petitioner, on his individual return for the year 1940, reported the amount of $42,598.98 as his distributive share of the reported net income of Construction Co. for that year, and the respondent increased each petitioner's taxable income by the amount of $1,481.50 as a result of certain adjustments in his determination of the net income of Construction Co. for 1940, which adjustments included an increase of the latter's reported distributive share of the net income of Pioneer by the amount of $5,876.02.

On their respective individual returns for 1941, Wade E. Moore reported $57,226.84, Vern Forcum reported $103,008.31, and Clarence B. Ford reported $42,920.13, as their respective distributive shares of the net income of Construction Co. for that year. The partnership return of Construction Co. for 1941 reported as its 50 per cent distributive share of the net income of three partnerships the following amounts: $175,238.58 from Pioneer, $17,576.21 from Aldrich and $13,613.21 from Brayton; and the respondent, in his determination, increased Construction Co.'s distributive share from each of such partnerships. For the year 1941 and as the result of various adjustments, the respondent determined that the net income of Construction Co. was $240,766.75 and that each petitioner's share thereof was $60,191.69.

For the year 1941 the respondent increased each petitioner's taxable income by $69,210.54 as a dividend from the Forcum-James Co., a Tennessee corporation.

*First Question Under the First Issue—Farm Operations.*

This question involves the redetermination of Construction Co.'s 50 per cent distributive share of the net income of the partnerships of Pioneer and Brayton, respectively, and also Pioneer's and Brayton's respective distributive shares of the net income of the partnerships of Pioneer-Hereford Co. and Hall Farm Co. The specific question is whether respondent erred in disallowing as ordinary and necessary business expense deductions for 1941 the respective amounts of $6,809.72 expended by Pioneer, $15,397 expended by Pioneer-Hereford Co., and $3,013.99 expended by Hall Farm Co. in connection with their respective farm operations during 1941. In the alternative, peti-

tioners allege that respondent has erroneously overstated Pioneer's net income by the amount of $5,101.59 from cattle operations for 1941, both directly as attributable to its own operations and indirectly as attributable to the operations of the subpartnerships of Pioneer-Hereford Co. and Hall Farm Co.

FINDINGS OF FACT.

Throughout the year 1941 Construction Co. owned a 50 per cent interest in Pioneer and Brayton; Pioneer owned a 50 per cent interest in the partnership of Pioneer-Hereford Co. of Dyersburg, Tennessee (hereinafter referred to as Hereford), which latter was engaged principally in farm operations and kept its books on the basis of a fiscal year ended June 30; and Pioneer and Brayton each owned a 50 per cent interest in the partnership of Hall Farm Co. of Dyersburg, Tennessee (hereinafter referred to as Hall Farm), which was also engaged principally in farm operations.

In determining Pioneer's net income for 1941, respondent disallowed a deduction of $6,809.72 claimed by it for expenditures in its farm operations. As a result of his disallowing Hereford's claimed deduction of $15,397 for expenditures in its farm operations respondent increased Pioneer's reported net income in the amount of $7,698.50 by decreasing its 50 per cent distributive share of the net loss reported by Hereford for the latter's fiscal year ended June 30, 1941.

As a result of his disallowing Hall Farm's claimed deduction of $3,013.99 for expenditures in its farm operations respondent increased the reported net income of Pioneer and Brayton for the year 1941 in the respective amounts of $1,507 and $1,506.99 by decreasing their 50 per cent distributive shares of the net loss reported by Hall Farm.

During the calendar year 1941 Pioneer expended $6,809.72 in connection with its farm operations, such sum consisting of $5,943.17 for cattle purchases, $586.55 for equipment, $250 for levee repairs, and $30 for fees. Of the cattle so purchased Pioneer sold in the same year cattle costing $3,878.77 for a total selling price of $3,236.26, resulting in a loss of $642.51 from such sales.

During its fiscal year ended June 30, 1941, Hereford expended $15,397 for the purchase of cattle in connection with its farm operations. Of the cattle so purchased in that fiscal year Hereford sold in the same year cattle costing $2,438.10 for a total selling price of $2,919.20, resulting in a profit of $481.10 from such sales.

During the calendar year 1941 Hall Farm expended $3,013.99 for the purchase of cattle and hogs in connection with its farm operations. Of the hogs so purchased in 1941 Hall Farm sold, in the same year, hogs costing $295.75 for a total selling price of $544.16, resulting in a profit of $248.41 from such sales.

OPINION.

The petitioners presented no evidence with respect to Pioneer's expenditures in 1941 for equipment, levee repairs, and fees, and, on brief, have abandoned their claim based thereon.

The respondent admits that farm operation expenditures were made in the amounts of $6,809.72 by Pioneer, $15,397 by Hereford, and $3,013.99 by Hall Farm, and further admits that he has not allowed any portion of such amounts, respectively, as a deduction in his determination of each partnership's net income for the period in question.

The complaint of petitioners is as to respondent's failure to allow any deduction for the *cost of cattle sold* by Pioneer and Hereford, and the *cost of hogs sold* by Hall Farm. Our above findings of fact as to such cost is conclusive on this question. The gain or loss sustained by Pioneer, Hereford, and Hall Farm on their respective sales is as set out in our findings of fact. Petitioners have failed to prove that such partnerships are entitled to any other deductions in determining their respective gain or loss on farm operations. Certain schedules, prepared by the office manager, purporting to show a recomputation of each partnership's net income or net loss on cattle operations, as per the books of accounts, include such items as expenses, depreciation on equipment, and depreciation on cattle, as to which no specific issues have been raised and no proof offered as to the correctness thereof. Accordingly, such schedules may not be accepted *in toto* as establishing the correct recomputations.

### Second Question on First Issue—Depreciation, Contracting Equipment.

This question involves the redetermination of Construction Co.'s 50 per cent distributive share of the net income of Pioneer for the years 1940 and 1941. In its income tax returns Pioneer claimed deductions for depreciation on its construction equipment in the amounts of $37,767.75 for 1940 and $72,250.16 for 1941, and petitioners allege error in the respondent's disallowance of $11,752.04 for 1940 and $16,705.64 for 1941 of such claimed deductions in his determination of Pioneer's distributable net income for each of those years. Respondent denies error in such disallowances.

FINDINGS OF FACT.

Prior to and during 1940 and 1941 Pioneer's principal business was that of a contractor in the construction of levees, dams, reservoirs, and roads and in excavation work, all of which involved digging, moving, dumping, and grading of soil, and it owned various types

of equipment employed in that work. During 1940 and 1941 Pioneer had contracts which because of the nation's defense program required 24 hours a day operation for excavation work on defense plants where speed was essential; for construction of levees sometimes 30 feet high above ground level and having very steep grades; and for construction of earth-fill dams approximately 25 feet high. The sand, mud, and steep grades encountered on those jobs, the round-the-clock use of equipment without time for proper upkeep and the usual repair of same, and the necessity of employing new inexperienced employees caused much greater wear and tear on Pioneer's equipment during 1940 and 1941 than would have occurred under normal operating conditions. During 1941 and subsequently Pioneer had more break-downs on equipment than ever before, because of the extra hard use and lack of repair parts. Pioneer's past experience showed that good equipment is a vital and principal factor in meeting competition in its line of work and it operated on an established custom of buying new equipment as often as needed, but during the period in question such equipment was hard to obtain and, as a consequence, old equipment was kept in use beyond its economical usefulness.

During the years in question Pioneer owned a large number of items of construction equipment, but only 16 of such items are involved herein, and the remaining useful life of such 16 items was as follows:

| Item | Remaining Life |
|---|---|
| (1) One Page dragline | 5 yrs. from 1- 1-40 |
| (2) Two Euclid Trac-Trucks | 2 yrs. from 1- 1-40 |
| (3) Two Euclid Trac-Trucks | 2 yrs. from 1- 1-40 |
| (4) One bulldozer | 2 yrs. from 1- 1-40 |
| (5) One auto patrol | 2 yrs. from 1- 1-40 |
| (6) One used Bucyrus dragline | 4 yrs. from 1- 1-40 |
| (7) One bulldozer | 3 yrs. from 1- 1-40 |
| (8) One Cat. motor grader | 3 yrs. from 3- 1-40 |
| (9) One D-4 tractor and bulldozer | 3 yrs. from 3- 1-40 |
| (10) One D-6 tractor | 3 yrs. from 6- 1-40 |
| (11) Two Kohler light plants | 3 yrs. from 7- 1-40 |
| (12) One lot used grading equipment | 2 yrs. from 12-31-40 |
| (13) One used Model S N W dragline | 2 yrs. from 1- 1-41 |
| (14) Three used N W draglines | 3 yrs. from 7- 1-41 |
| (15) Three used Athey wagons | 2 yrs. from 10- 1-41 |
| (16) Six Euclid Trac-Trucks | 3 yrs. from 11- 1-41 |

OPINION.

There is no controversy as to the date of acquisition, the cost of all the items involved, and the unrecovered cost on December 31, 1939, of items acquired prior to 1940. The question presented as to the 16 items is one of fact; namely, What was the remaining useful life,

on January 1, 1940, for items acquired prior to that date, and from the date of acquisition for items acquired during 1940 and 1941? On such question our above finding of ultimate facts is conclusive.

### Third Question on First Issue—Pension Trust.

This question involves the propriety of respondent's disallowance of the amounts of $20,000 claimed by Construction Co., $7,500 claimed by Pioneer, $2,400 claimed by Aldrich, and $500 claimed by Brayton, as deductions for ordinary and necessary business expenses represented by the contribution by each in that year to a pension trust for the benefit of their respective employees, or, in the alternative, represented by compensation paid for services rendered by their respective employees during 1941. Respondent denies error in his disallowance of such claimed deductions in determining the distributive net income of each partnership:

#### FINDINGS OF FACT.

On November 15, 1941, a written agreement, or plan, effective as of November 1, 1941, was entered into by Forcum-James Co., Forcum-James Construction Co., Pioneer Contracting Co., L. O. Brayton & Co., and W. R. Aldrich & Co. for the establishment of a pension trust, styled "Forcum-James Associates Pension Trust," for the "exclusive benefit of some or all of the employees of each member of the group * * *." The plan provided that beginning with November 1941, and on or before December 30 of each year thereafter, each member of the group was to notify the trustees of the "reasonable and fair Pension deposit voted to the employees," payment thereof to be made to the trustees within 2 months; that in determining the amount of the deposit each group member had the exclusive right to determine the amount, if any, for each of its employees, taking into consideration "such factors as responsibility of position, salary, age, period of service * * *"; that any payment into the fund was in no event to be less, in any one year, than $50 for any employee who participated; that the participating employees were not required to match any funds deposited with the trustees by any of the group members; that all present employees who had been in the employ of any of the group members for at least one month out of each of the preceding 5 years prior to June 30, 1941, and who were still employed as of November 1, 1941, were eligible for participation in the plan; that participants were eligible for retirement pension payments on the first day of the month following either the age of 60 if employed for a period of not less than 15 years, or the age of 65 if employed for a period of less than 15 years; that upon retirement a participant would

be entitled to 1 per cent per month of his individual account until exhausted and in the event of his death his designated beneficiary should continue to receive the balance of payments due; that in the event of death before retirement age the account balance was distributable to any beneficiary previously indicated by the employee; that the trustees were to invest the funds in the manner set out in the declaration of trust and the earnings therefrom were to belong to the individual employee participants and credited to their separate accounts annually within a reasonable time after the close of the fiscal year of the fund; that in the event of loss of his job through his own acts which resulted in the donors suffering any damage, the participant was to forfeit all fund earnings credited to his account, but those earnings were to be added to the earnings for the year in which the loss of job took place and redistributed to the remaining participants on the same basis as all other earnings for that year, and the balance remaining in such account was to be distributed to him immediately or retained by the trustees until the former employee reached retirement age and then distributed to him.

The plan further provided that it was entirely voluntary on the part of the donors and was not to be construed as creating a contractual relationship or a guaranty between the donors and an eligible employee; that the donors could amend or terminate the plan, provided, however, that no amendment was to be retroactive, nor was any amendment or termination to affect benefits created for individual participants; that in case of a termination of the plan and a liquidation of the fund, "anything else to the contrary notwithstanding, title to all monies or properties held for the benefit of each participant on the date of termination shall pass to such participant"; that it was to be impossible, at any time prior to the satisfaction of all liability with respect to employees, for any part of the corpus or income to be used for or diverted to purposes other than the exclusive benefit of participating employees. Also, under the plan the trustees were to maintain a separate account for each participating employee, showing, among other things, the pension deposits made by the donors for participants' accounts, the aliquot share of the fund earnings, pension payments, balances remaining, and contingent beneficiaries, and were to make settlements with the participants in accordance with the plan. The plan was actuarily sound.

The declaration of trust executed on the same date as the plan named, as trustees, Vern Forcum, W. E. Moore, C. B. Ford, R. M. Ford, Alvin Hall, L. O. Brayton, W. R. Aldrich, and F. B. Liddell. It provided that the trustees should have complete management and control of the trust fund, including powers of investment, but they

were to have no authority to take action impairing the established benefits of qualified participants, and that the cost of administering the fund should be paid out of the fund earnings. It also provided that the trust "shall continue until all funds trusteed hereunder are paid out and disbursed *in accordance with the terms of the plan* * * *" (emphasis supplied) unless sooner amended or terminated by majority action of the trustees and the donor companies, but such action should not have retroactive effect nor affect current benefits created for individual participants in accordance with the plan. The declaration of trust also contained provisions similar to those in the plan prohibiting the impairment of created rights of participants or the use of corpus or income for purposes other than for the exclusive benefit of participant employees.

The pension plan and trust agreement were printed in booklet form and distributed to all the employees of Forcum-James Associates.

The funds of the trust were kept separate from any funds of the donors to the trust fund.

During 1941, in connection with the pension plan, each of the partnerships, respectively, paid over to the trustees amounts as follows:

| Partnership | As accrued expenses of trust | As contributions for employees |
|---|---|---|
| Construction Co. | None | $20,000 |
| Pioneer | $200 | 7,300 |
| Aldrich | 50 | 2,350 |
| Brayton | None | 500 |

The $20,000 contribution made by Construction Co. consisted of $7,500 each for Guy N. Hall and Alvin G. Hall and of $2,500 each for W. R. Aldrich and L. O. Brayton. None of those four individuals was either a partner or employee of Construction Co., and the contributions were made on the basis that the valuable services rendered by each of the Halls to Pioneer, by Aldrich to W. R. Aldrich & Co., and by Brayton to L. O. Brayton & Co., were a principal factor in the production of substantial income for those partnerships, in which Construction Co. had a 50 per cent interest.

The $7,300 contributed by Pioneer consisted of various amounts of contributions for its employees who were eligible under the plan. The amount contributed for each employee was determined by Pioneer on the basis of the value of services rendered, the responsibility of the position, and regular compensation of the employee. All the eligible employees were grouped according to the character of work performed. The contributions so determined and made to the fund fell in the following classifications:

| Number of employees | Job description | Contributions | |
|---|---|---|---|
| | | For each | Total |
| 1 | Estimating engineer | $1,000 | $1,000 |
| 2 | Superintendent | 1,000 | 2,000 |
| 1 | Field office manager | 500 | 500 |
| 1 | Foreman | 500 | 500 |
| 3 | Foreman of lesser importance | 250 | 750 |
| 2 | Foreman of lesser importance | 200 | 400 |
| 1 | Foreman of lesser importance | 150 | 150 |
| 1 | Foreman of lesser importance | 100 | 100 |
| 38 | Machine operators, timekeepers, etc | 50 | 1,900 |
| | Total | | 7,300 |

The total compensation paid by Pioneer to the 50 employees during 1941 amounted to $68,045.66. As to each employee, the wages earned by him during 1941, together with Pioneer's 1941 contribution to the pension fund for him, constituted reasonable compensation for services actually rendered during 1941.

The $2,350 contribution made by Aldrich consisted of various amounts of contributions for each of 10 of its employees who were eligible under the plan and the amount contributed for each such employee was similar in amount and determined on the same basis as in the case of Pioneer. The total compensation paid by Aldrich to those 10 employees during 1941 amounted to $18,228.28, and as to each employee the compensation earned by him during 1941, together with the contribution to the pension fund for him, constituted reasonable compensation for services actually rendered during 1941.

The $500 contributed by Brayton consisted of one contribution for one employee, Pennie B. Johnson, who was the only employee eligible under the pension plan at that time. For a number of years Miss Johnson had been the office manager and bookkeeper and the only regular employee of Brayton, which had followed the practice of having its employees furnished by other concerns with which it had contracts. The wages earned by Miss Johnson during 1941, together with the contribution to the pension fund for her, constituted reasonable compensation for services actually rendered during 1941.

Since 1941 the pension plan and trust have continued in operation and each partnership has continued to make annual contributions thereto pursuant to the plan. The trust fund has been maintained separate and independent from the assets of each of the contributing companies.

### OPINION.

We hold that since each of the amounts of $7,300 contributed by Pioneer, $2,350 contributed by Aldrich, and $500 contributed by Brayton was irrevocably paid in 1941 to a pension trust fund for selected employees and since the contributions, together with the wages

earned by each of such employees, constituted reasonable compensation for services actually rendered during 1941, each such amount paid by each such partnership is deductible as a business expense under section 23 (a) (1) of the Internal Revenue Code,[1] irrespective of the question as to whether such amounts constituted a contribution under section 23 (p) [1] to a pension trust described in section 165. *Gisholt Machine Co.,* 4 T. C. 699; *Phillips H. Lord,* 1 T. C. 286. The instant case is distinguished from *Lincoln Electric Co.,* 6 T. C. 37, 54, on the same ground the latter case was distinguished from *Gisholt Machine Co., supra.* Since the terms of the pension trust provide that the cost of administering the fund shall be paid by the fund out of its earnings and since the trust was a separate entity from Pioneer and Aldrich, the amounts of $200 and $50 paid by those partnerships, respectively, in 1941 for accrued expenses of the trust did not constitute a deductible business expense of Pioneer and Aldrich within section 23 (a), *supra.*

We further hold that, since the amount of $20,000 contributed by Construction Co. to the pension fund in 1941 did not constitute either contributions for persons employed by it or compensation for services actually rendered to it, such amount is not a deductible business expense under section 23 (a) (1) or 23 (p), *supra.*

### Second Issue—Partnership Interest.

Respondent determined that each petitioner herein owned a 25 per cent interest in the partnership of Forcum-James Construction Co. throughout the year 1941. Petitioners assign error in such determination and allege, as to each, that Wade E. Moore owned an 8⅓ per cent interest; that Vern Forcum owned a 15 per cent interest; and that

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(p) PENSION.TRUSTS.—

(1) GENERAL RULE.—An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees shall be allowed as a deduction (in addition to the contributions to such trust during the taxable year to cover the pension liability accruing during the year. allowed as a deduction under subsection (a) of this section) a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions. but only if such amount (1) has not theretofore been allowable as a deduction, and (2) is apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) EXEMPTION OF TRUSTS UNDER SECTION 165.—The provisions of paragraphs (1) and (2) of this subsection shall be subject to the qualification that the deduction under either paragraph shall be allowable only with respect to a taxable year (whether the year of the transfer or payment or a subsequent year) of the employer ending within or with a taxable year of the trust with respect to which the trust is exempt from tax under section 165.

Clarence B. Ford owned a 6.25 per cent interest in such partnership throughout 1941.

FINDINGS OF FACT.

The Construction Co. partnership was formed in 1933. During 1940 and 1941 that partnership, the Forcum-James Co., a corporation, and the partnerships of Pioneer Contracting Co., W. R. Aldrich & Co., and L. O. Brayton & Co. were associated, and the Construction Co. made investments in and advances to the other members of the group who were engaged in the construction business. Construction Co. was interested in the construction business through such investments and advances. The construction business is a hazardous one, in which the difference between realizing substantial profits, no profits, or losses ordinarily depends to a large extent upon the skill, experience, and ability of the persons who operate the business. During 1940 and 1941 the Construction Co. owned no equipment and had no employees (its bookkeeper was paid by the Forcum-James Co.), and it regarded its income as resulting primarily from capital investments. While the partners of the Construction Co. were not expected to devote a great deal of time to their services rendered it, they did render services to the other members of the group.

Throughout the year 1940 each of the three petitioners herein and the fourth partner, R. M. Ford, owned a 25 per cent interest in the Construction Co. That partnership's December 31, 1940, balance sheet showed the following:

ASSETS:
Current (total) _____ $5, 660. 88
Other:
    Investments and advances in other partnerships and associated companies _____ $404, 059, 02
    Other investments and loans_____ 40, 122. 28
                                       444, 181. 30

     Total assets_____ 449, 842. 18

LIABILITIES:
Total liabilities_____ 12, 149. 65
CAPITAL:
Capital accounts:
    Vern Forcum_____ $109, 423. 14
    C. B. Ford_____ 109, 423. 13
    R. M. Ford_____ 109, 423. 13
    W. E. Moore_____ 109, 423. 13

     Total _____ 437, 692. 53

Total liabilities and capital_____ 449, 842. 18

Attached to the balance sheet as of December 31, 1940, of the partnership is a statement as follows:

NOTATION RE: PARTNERS CAPITAL ACCOUNTS

Effective midnight December 31, 1940 two partners, through irrevocable gifts, transferred part of their partnership interests. With the start of business January 1, 1941, the partners and their respective interests are as follows:

| Partner | Per Cent |
|---|---|
| Vern Forcum | 25.00 |
| Ralph M. Ford | 25.00 |
| Wade E. Moore | 16.67 |
| Charles F. Moore, Trustee for William Kent Ford and Jere B. Ford, minors | 12.50 |
| Mrs. Madge Moultrie Moore | 8.33 |
| Mrs. Gladys Blankenship Ford | 6.25 |
| C. B. Ford | 6.25 |
| Total | 100.00 |

At the close of the year 1940 the Construction Co. mailed copies of the above mentioned balance sheet and schedule of the partners' capital accounts to credit agencies, bonding companies, banks, security companies, various business firms, state highway departments, and the partners. At the close of subsequent years that company mailed copies of its balance sheet and similar schedules to such interested parties.

Prior to and during 1940 Gladys B. Ford, wife of C. B. Ford, insisted that the latter give her an interest in his business so that she would have an independent income. She knew nothing about the construction business, except as a wife ordinarily has general knowledge of her husband's business interests, but she knew that the construction business is a hazardous enterprise. Late in 1940 C. B. Ford considered making a gift to his wife of a one-fourth share of his capital account in the Construction Co. and also making a gift of a one-half share of such capital account in trust for the benefit of his two sons, aged 12 and 9 years, so they might have an early association with business matters. The other partners agreed to admitting Gladys B. Ford and the trustee for the sons into the partnership of Construction Co. C. F. Moore, who was experienced in the business as the office manager for the partnership, but was not a partner and not related to any of the partners, agreed to accept the trusteeship for the two sons. In the latter part of December 1940 C. B. Ford told his wife that he had made the contemplated gifts to her individually and to the trustee for the benefit of their two sons, effective at midnight December 31, 1940, and at that time there was no understanding between them that any part of the gift to her or the trusts or the income therefrom was to be returned to C. B. Ford, or used for household expenses. Since December 31, 1940, Gladys B. Ford has made withdrawals of both capital and income from the partnership and used the funds for investments in her own name. After December 31, 1940, Gladys B. Ford discussed business matters with her husband, she had some conversations with the partners at the

office and at their respective homes about the business, and she signed contracts as a partner, but other than that she performed no services to the partnership business and contributed no capital thereto other than the gift from her husband. She filed income tax returns and reported thereon the share of the partnership income distributable to her.

On December 31, 1940, C. B. Ford executed, as grantor, an irrevocable declaration of trust whereby, effective at midnight on December 31, 1940, he transferred a 6.25 per cent interest in his capital account in Construction Co. to each of his minor sons, William Kent Ford and Jere B. Ford, as beneficiaries of the trust of which Charles F. Moore was trustee, with broad powers of management and control and with all the duties and rights of a partner, but limited to the amount of the trust property. The trust was to terminate when the sons attained specified ages, with contingent remainders over. The trust instrument directed that the trustee's share of the partnership's distribution of capital and of its profits be distributed to him and become part of the trust assets; that the trustee in his discretion distribute the income of the trust as he deemed advisable, necessary, or desirable to the beneficiaries or to others on their behalf; that the trustee might cause any of the trust property to be registered in the name of his nominee, to take and keep the same unregistered, in bearer form or in such condition that the same would pass by delivery without disclosure, in any case, of any trust; and that the trust did not relieve the grantor of his parental obligation for maintenance, support, and education of the beneficiaries.

After the transfer in trust Charles F. Moore, in his capacity as trustee, signed contracts as a partner whenever necessary and discussed the partnership business. He maintained books of account and a bank account and lockbox in his name as trustee, and filed tax returns for the trust.

C. B. Ford filed gift tax returns on the above mentioned transactions and the taxes paid thereon have not been refunded. He knew that the effect of such transactions would be a reduction of his personal income taxes, but that was not his principal motive in making the transactions.

On February 11, 1941, C. B. Ford addressed a letter to Construction Co., stating that with the knowledge and approval of the original partners he had made the above mentioned gifts, effective at midnight on December 31, 1940, to his wife and sons of a 6.25 per cent interest to each, leaving him with a 6.25 per cent interest in the capital account and profits and losses of that partnership; that the donees thereby became partners with the same rights and obligations as any of the partners, which necessitated "a reallocation of my share of the partnership profits or losses" beginning January 1, 1941; that, "My intention

is to make an irrevocable gift to my wife and two children and not merely an assignment of income" and "To carry out my intention, a copy of this letter is furnished" to the partners, and the donees or their trustee; and, further, that the Construction Co. was thereby "instructed" to transfer to his wife and the trustee their respective shares of his original 25 per cent interest in the partnership capital account.

By letter dated February 11, 1941, addressed to the Construction Co., Wade E. Moore stated the following:

The partnership records disclose that as of December 31, 1940, I had a 25 per cent interest in the firm's capital of $437,692.53. Effective midnight December 31, 1940, I made a gift of one-third of my 25 per cent interest in the partnership to my wife, Madge Moultrie Moore.

This gift was made with the knowledge and approval of Vern Forcum, C. B. Ford and R. M. Ford, all the other partners in the Forcum-James Construction Company. With their consent and knowledge they thereby agreed to accept the donee into partnership, bestowing on her the same rights and imposing on her the same obligations as any partner or partners may have.

With the admittance of this new partner, a reallocation of my share of the partnership profits and losses becomes necessary. Starting January 1, 1941, my share of the profits or losses shall be 16.67 per cent and that for Mrs. Madge Moultrie Moore, 8.33 per cent.

My intention is to make an irrevocable gift to my wife and not merely an assignment of income. To carry out my intention, a copy of this letter is furnished the individual members of the partnership and the donee.

You are hereby instructed to transfer one-third of my capital account, as it is reflected on the books of the partnership as of January 1, 1941, to Mrs. Madge Moultrie Moore.

By letter dated May 20, 1941, addressed to the Construction Co., Wade E. Moore stated the following:

The partnership records disclose that as of January 31, 1941, I had a 16.67 per cent interest in the firm's capital. Effective midnight of that day, I made a gift to Harry Moultrie, Trustee for Marion Moore, of one half of that interest. As of the start of business February 1, 1941, Harry Moultrie, Trustee, by virtue of the gift, was an 8.33 per cent partner in the Forcum-James Construction Company.

This gift was made with the knowledge and approval of all partners in the Forcum-James Construction Company. This transferred 8.33 per cent of my 16.67 per cent interest and left me with 8.34 per cent of the partnership interest. This gift was made to the Trustee since Marion Moore is a minor. Each partner agreed to accept the Donee into the partnership, bestowing on her the same rights and imposing the same obligations as any of the other partner or partners may have. With the admittance of this new partner, a reallocation of my share of the partnership profits or losses becomes necessary. Starting with February 1, 1941, my share of the profits or losses shall be 8.34 per cent and that of Harry Moultrie, Trustee, 8.33 per cent.

My intention is to make an irrevocable gift and not merely an assignment of income. To carry out this intention, a copy of this letter is furnished to the individual members of the partnership and likewise to the Donee and Trustee.

You are hereby instructed to transfer 8.33 per cent of my capital account on February 1, 1941, to the Trustee herein set out.

By letter dated May 20, 1941, addressed to Harry Moultrie, Dyersburg, Tennessee, Wade E. Moore stated the following:

In accordance with our understanding, you agreed to act as Trustee for my daughter Marion. This trusteeship covers the 8.33 per cent partnership interest in the Forcum-James Construction Company. It is effective as of the start of business February 1, 1941, and terminates when Marion reaches age 21, on January 31, 1943.

It is understood that you will do all the things necessary to the premises as if you yourself were the owner of the partnership interest subject, however, to the rights and benefits accruing to the beneficiary.

If for any unknown reason it becomes impossible for you to act as Trustee for any period of this trust agreement, then there shall be no right of substitute trustee vested in you and the First Citizens National Bank of Dyersburg automatically succeeds you as Trustee. It is also agreed that you will serve without compensation and without the necessity of making bond.

In order that you may have an absolute record of the understanding reached some time ago, it is now reduced to writing. Will you please indicate your acceptance on the two copies enclosed and return them to me immediately.

Sincerely,

[Signed]   W. E. MOORE.

Enc.

ACCEPTED:

[Signed]   H. H. MOULTRIE

Vern Forcum owned a 25 per cent interest in the Construction Co. from the time that partnership was organized in 1933 up to and including April 1, 1941. On the latter date, with the knowledge and consent of the other partners, he made a purported gift of two-fifths of his 25 per cent interest, or a 10 per cent interest, in the capital account of that partnership to his son Donald, who in March 1941 had become 21 years of age and was then attending college. Vern Forcum advised his son of the purported gift by letter. Donald had worked in various capacities on construction jobs for Forcum-James Co. and Pioneer during his summer vacations since he was 18 years old, but never worked for Construction Co. Donald graduated from college in 1943 and then went into the Seabees, but while he was in the States he signed contracts as a partner of Construction Co., whenever necessary. Subsequent to the time of the purported gift, Donald withdrew capital and income from the Construction Co., which were deposited in his bank account or used to purchase securities in his name. Vern Forcum kept the key to the son's lockbox for purposes of safety.

On April 18, 1941, Vern Forcum addressed the following letter to the Construction Co.:

In recognition of some of the activities and satisfactory services that my son, Donald Forcum, has rendered and is presently rendering to the partnership, it is my desire to reduce the percentage of profits to which I am entitled and have it go to my son. At the present time I participate to the extent of 25 per cent of the firm's profit.

Effective April 1, 1941, my participation shall be 15 per cent and that of Donald 10 per cent, still aggregating the 25 per cent original participation.

This matter has been discussed with the other partners of the firm, who have given their consent to the arrangements herein outlined and agree that Donald become a partner in the firm, entitled to all the privileges, rights, and enjoyments, and take on all responsibilities and liabilities flowing to and imposed on partners under the Tennessee laws.

This letter is furnished you in duplicate so that proper office records may be made and it is also suggested that one copy, preferably the original, be offered for signature as approval by each of the members of the firm. Space for that has been provided for below.

> Very truly yours,
>
> [Signed]  VERN FORCUM

[Signed]

C. B. FORD
R. M. FORD
W. E. MOORE
MRS. GLADYS B. FORD
CHARLES FULLER MOORE, TRUSTEE
MRS. MADGE MOULTRIE MOORE

Vern Forcum filed a gift tax return on the purported gift to his son and paid the tax shown thereon to be due. The fact that such gift effected a reduction in Vern Forcum's personal income tax was only incidental to his making the gift.

After the above mentioned transfers of partnership interests, entries were made on the Construction Co.'s books to reflect the reallocation of capital accounts, but otherwise the partnership operated in the same manner as it had prior to 1941, except that newly designated partners signed contracts whenever necessary.

The Construction Co.'s balance sheet and related schedules for December 31, 1941, showed the following:

ASSETS:

| | | |
|---|---|---|
| Current: | | |
| Cash | | $29,884.48 |
| Marketable securities | | 14,005.01 |
| Total current assets | | 43,889.49 |
| Other: Investments in and advances to Pioneer, Aldrich & Co., Brayton & Co., and Forcum-James Co. | $515,870.37 | |
| Other investments and loans | 239,654.72 | |
| Deposits on bids and plans | 5,000.00 | |
| Total other assets | | 760,525.09 |
| Total assets | | 804,414.58 |

| | |
|---|---|
| LIABILITIES | 0.00 |
| CAPITAL | 804,414.58 |

The Construction Co.'s statement of partners capital accounts at December 31, 1941, showed the following:

| | Total | R. M. Ford | Vern Forcum | Donald Forcum | C. B. Ford |
|---|---|---|---|---|---|
| Capital 1-1-41 | $437,692.53 | $109,423.13 | $109,423.14 | $0.00 | $109,423.13 |
| Transfer of capital additions— deductions* | 0.00 | 0.00 | *43,769.25 | 43,769.25 | *82,067.34 |
| Total | 437,692.53 | 109,423.13 | 65,653.89 | 43,769.25 | 27,355.79 |
| Net profit for year ended 12-31-41 | 686,722.05 | 171,680.51 | 103,008.31 | 68,672.21 | 42,920.13 |
| Total | 1,124,414.58 | 281,103.64 | 168,662.20 | 112,441.46 | 70,275.92 |
| Capital withdrawn | 320,000.00 | 80,000.00 | 48,000.00 | 32,000.00 | 20,000.00 |
| Capital 12-31-41 | 804,414.58 | 201,103.64 | 120,662.20 | 80,441.46 | 50,275.92 |
| Profit and loss sharing ratios | 100% | 25% | 15% | 10% | 6¼% |

| | C. F. Moore, trustee | Gladys B. Ford | Wade E. Moore | Madge M. Moore | Harry Moultrie, trustee |
|---|---|---|---|---|---|
| Capital 1-1-41 | $0.00 | $0.00 | $109,423.13 | $0.00 | $0.00 |
| Transfer of capital additions— deductions* | 54,711.56 | 27,355.78 | *72,948.76 | 36,474.38 | 36,474.38 |
| Total | 54,711.56 | 27,355.78 | 36,474.37 | 36,474.38 | 36,474.38 |
| Net profit for year ended 12-31-41 | 85,840.26 | 42,920.13 | 57,226.84 | 57,226.83 | 57,226.83 |
| Total | 140,551.82 | 70,275.91 | 93,701.21 | 93,701.21 | 93,701.21 |
| Capital withdrawn | 40,000.00 | 20,000.00 | 26,666.66 | 26,666.67 | 26,666.67 |
| Capital 12-31-41 | 100,551.82 | 50,275.91 | 67,034.55 | 67,034.54 | 67,034.54 |
| Profit and loss sharing ratios | 12½% | 6¼% | 8⅓% | 8⅓% | 8⅓% |

## OPINION.

This second issue arises from the respondent's determination that each petitioner herein and R. M. Ford owned a 25 per cent interest in the Forcum-James Construction Co. partnership throughout the calendar year 1941 and that accordingly each petitioner herein is taxable on 25 per cent of that partnership's net income for 1941.

The question to be decided is whether, for Federal tax purposes, the Forcum-James Construction Co. was a partnership composed of R. M. Ford, Vern Forcum, C. B. Ford, Wade E. Moore, Gladys B. Ford, C. F. Moore as trustee for William K. and Jere B. Ford, and Madge M. Moore throughout 1941, with additional partners in the persons of Harry Moultrie as trustee for Marion Moore from February 1, 1941, and Donald Forcum from April 1, 1941, to the end of the year.

Under the facts above set forth, the disposition of this partnership question in favor of respondent is, in our opinion, controlled by the principles applied in *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293; *Abe Schreiber*, 6 T. C. 707; *Floyd D. Akers*, 6 T. C. 693; *Ed. Dubinsky Durwood*, 6 T. C. 682; *Lewis Coleman Benson*, 6 T. C. 748; *Howard B. Lawton*, 6 T. C. 1093; *John Lang*, 7 T. C. 6; *W. A. Belcher*, 7 T. C. 182; and *John G. Scherf*, 7 T. C. 346.

In the *Tower* case the Court said:

\* \* \* If she [a wife] either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. \* \* \* But when she [a wife] does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws.

In the instant case it is clear that on January 1, 1941, February 1, 1941, and April 1, 1941, the effective dates on which petitioners herein purportedly made gifts of partnership interests, directly or through the medium of trusts, to their respective wives and/or children, no capital "orginating" with such donees was invested in the partnership business. Instead, there was merely a reallocation of the then existing capital accounts of the three petitioners herein by reason of the purported gifts.

It is also clear that the partnership business continued to operate in the same manner after the purported gifts as it did before, except that: Gladys B. Ford and Charles F. Moore, the latter as trustee of C. B. Ford's minor children, discussed partnership matters and they, together with Donald Forcum, signed contracts as partners when necessary. We are of the opinion that by such acts those parties did not substantially contribute "to the control and management of the business, or otherwise perform vital additional services" to the partnership business. In accordance with a stipulation of the parties at the hearing, our conclusion with regard to the parties mentioned above in this paragraph applies equally to Madge Moutrie Moore, the wife of Wade E. Moore, and Harry Moultrie, trustee for Wade E. Moore's minor daughter. In this connection, petitioners, on brief, contend that no services were rendered the partnership by the purported new partners and that the income of the partnership was produced solely by capital.

We hold that, for Federal tax purposes, the purported new partnership relation during 1941 lacked reality and that the respondent did not err in his determination that each petitioner herein is taxable on 25 per cent of the net income of the Forcum-James Construction Co. for the calendar year 1941.

### Alternative to Second Issue—Trustees' Fees.

Petitioners C. B. Ford and Wade E. Moore each allege, in the alternative, that, if the above mentioned trust created by him is not recognized for tax purposes, then he is entitled to deduct from his individual income, as ordinary and necessary business expenses, the fee paid the trustee for 1941. It is stipulated that this Court's conclusion as to C. B. Ford's right to deduct a $2,500 fee paid by the Ford

trust to Charles F. Moore, trustee, for 1941, shall be controlling as to Wade E. Moore's right to deduct a $500 fee paid by the Moore trust to Harry Moultrie, trustee, for 1941.

### FINDINGS OF FACT.

During 1941 Charles F. Moore, trustee for William K. and Jere B. Ford, maintained books of account, a bank account, and a lockbox for the trust, and he also received distributions of capital and income from the Construction Co. and made investments in securities, as trustee. Also, as trustee, he filed income tax returns for the trust. At the end of the year 1941 C. B. Ford, the grantor, and Charles F. Moore, the trustee, discussed and agreed upon a trustee's fee of $2,500, which was paid out of trust funds in 1941.

### OPINION.

In the second issue we held that, for Federal tax purposes, petitioners C. B. Ford and Wade E. Moore are each taxable on 25 per cent of the net income of the Construction Co.; in other words, the purported assignments of interests in that partnership were not recognized for tax purposes. In so holding, it is unnecessary for us to pass upon the matter of the validity of the Ford trust and the Moore trust under the laws of the State of Tennessee, since that is immaterial. There is no proof that the trusts had no legal existence. This alternative allegation for deductions claimed by the trustors individually for fees paid to the trustees, can not be sustained, for such petitioners are separate and distinct taxpayers from the trusts which paid the fees out of trust funds and this Court may not apply a doctrine of equitable recoupment because of our holding on the second issue herein. Cf. *Leslie H. Green*, 7 T. C. 263. We find no error in the respondent's failure to allow C. B. Ford a deduction of $2,500 for 1941 and Wade E. Moore a deduction of $500 for 1941 on account of fees paid to the trustees by the respective trusts.

### *Third Issue—Dividends.*

### OPINION.

In his deficiency notice the respondent, in explanation of his determination that each petitioner received a dividend of $69,210.54 in 1941, stated as follows:

The Forcum-James Company, a corporation in which you are a stockholder distributed through Forcum-James Construction Company, a partnership in which you are a partner, the amount of $500,000. It has been determined that the amount distributed represented a preferential distribution of earnings and profits of the corporation and this amount represents your taxable share thereof.

Each petitioner on this issue assigned as error that respondent over-stated "petitioner's taxable income for the year 1941 by including therein an amount of $69,210.54 as a dividend from Forcum-James Company, a Tennessee corporation," and in his statement of facts in his petition alleged that "Petitioner did not receive any dividend whatever from Forcum-James Company during the year 1941." The respondent denies such allegation of error and fact.

There is no evidence or testimony on this issue except the categorical statements of C. B. Ford and Vern Forcum that neither received any dividend from the Forcum-James Co. during 1941. Such testimony represents the conclusion of each witness as to the ultimate conclusion of fact that this Court is called upon to make. The petitioners did not deny in their pleadings, nor offer any proof nor argument, that the $500,000 was actually received by the partnership from the Forcum-James Co., as determined by respondent, but only denied that it was received in the character of a dividend. In view of the fact that there are no evidentiary facts of record upon which we can make any findings or reach any conclusion on this issue contrary to the respondent's determination, we sustain such determination. Cf. *Forcum-James Co.*, 7 T. C. 1195.

*Decision will be entered under Rule 50.*