OPINION. L Opper, Judge: For simplicity the issue relating to the validity of the partnership with petitioners’ children will first be considered. This would be a mere routine case for application of the Tower and Lusthaus[2] principle were it not for an ingenious device strenuously advanced by petitioners as an element controlling in the opposite direction. The children obviously contributed no new capital originating with them; they rendered no services, vital, managerial, or otherwise, to the partnership. But services of some sort were rendered to the business by an individual who was selected as “nominee” of the children’s interest and who was thereupon constituted a participant to some extent in the activities and operations of the enterprise itself. It is the services rendered by this nominee to which petitioners point as the distinguishing feature. Even, however, without the case of Wade E. Moore, 7 T. C. 1250, the contention so advanced by petitioners appears untenable. In one aspect, the nominee was acting as a mere individual not to any extent participating in the profits of the partnership, contributing his services and receiving in exchange a salary as a partnership employee. In another aspect, he was the warden of the minors’, interest — the protector, at least theoretically, of the property which they individually, as distinguished from the partnership as a whole, had acquired. It will not do to look too closely at this conception, since the spectacle of a total stranger appointed by the parents, protecting from despoilment on the part of these same parents property voluntarily given by them to their children, is not what one might term an excessively obvious illustration of the reality with which matters of taxation are supposedly treated. See Paul G. Greene, 7 T. C. 142,150. But assuming the transaction to have been in reality everything that its superficial description would make it, nevertheless the services rendered by the nominee in protecting the interests of the children against the possible actions of their copartners were services rendered to the children themselves, or to their benefactors, and not in any sense to the partnership or its business. For such services the interests supposedly residing in the minors are entitled to no credit under the vital or managerial services test of the Tower and Lusthaus cases. An identical result was reached in Wade E. Moore, supra. In that case an employee named Charles F. Moore, “who was experienced in the business as the office manager for the partnership, but was not a partner and not related to any of the partners, agreed to accept the trusteeship for the two sons,” aged twelve and nine years, to whom had been made “a gift of one-half share of * * * [their father’s] capital account” in a then existing partnership. “After the transfer in trust Charles F. Moore, in his capacity as trustee, signed contracts as a partner whenever necessary and discussed the partnership business.” In concluding that no valid partnership had been thus established so as to relieve the father of the tax liability on his full distributive share in the partnership income, we were “of the opinion that by such acts •those parties [including the trustee] did not substantially contribute ‘to the control and management of the business, or otherwise perform vital additional services’ to the partnership business.” The business continued to operate here, as it did there, without a substantial or significant change as far as control and management were concerned. W. M. Mauldin, 5 T. C. 743; affd. (C. C. A., 4th Cir.), 155 Fed. (2d) 666. Neither the nominee’s services contributed as a paid employee of the business nor his participation, as a representative of the children, in its control and management attained the significance necessary to that contribution of managerial or vital additional services called for by the doctrine of the Tower and Lusthaus cases. The conclusion must be that no partnership existed as far as the share of the children is concerned. II. The situation involving the respective wives is, however, radically different. The parties’ residence in a community property state and the conclusion that the partnership income was- attributable principally to the personal services of the husbands leaves in controversy only the comparatively small portion of the partnership income, whatever that may be, which might be determined to be the product of the relatively insignificant original capital contributed to the business by the husbands before their marriage. Accepting the testimony that a community interest was in each case bestowed upon the wives, an unchallenged aspect of the record incorporated as a fact in our findings, and proceeding upon the principle exemplified by an array of authority that neither writing nor consideration is necessary to support such a transfer,[3] the disposition of even this minor phase of the controversy presents no difficulty. The unavoidable conclusion is that all of the partnership income was that of the respective communities, and that the petitioner husbands are chargeable with only their community interest therein. III. The consequence of this result on the gift tax issue is that only a corresponding proportion of the gift was that of the respective husbands. The interest in the business transferred to the children was in fact limited to the capital accounts standing in the names of the petitioner husbands, and the terms of the agreement are adequate evidence that the parties intended the gifts to be restricted to the interests held by the marital communities, a conclusion entirely consistent with the necessary assumption that, on the least favorable interpretation, most of the partnership capital necessarily consisted of community property, resulting as it did preponderantly from the post-marital personal services of the husbands. The consequent fractional portion of each gift deriving from the petitioner-husbands, coupled with the control over its subject matter which they each retained through their domination of the partnership, and even more securely by the continuing option necessarily retained to deprive the partnership of its principal value by the discontinuance of their own services, cf. Lucas v. Earl, 281 U. S. 111, have led us to value the gifts as set forth in our findings. Cf. Willoughby H. Rothrock, 7 T. C. 848, with William H. Gross, 7 T. C. 837. The very factors of parental interest and business control which have determined our disposition of the partnership issue are considerations tending to diminish the monetary worth of the gifts in terms of the impersonal pecuniary standards of the market place. The values thus determined, falling as they do within the permitted exclusions and exemptions, eliminate the deficiencies on this phase of the controversy.[4] We accordingly find it unnecessary to decide that the gifts were “bona fide” or “completed” for purposes of determining a gift tax deficiency under the asserted remnant of authority of Robert P. Scherer, 3 T. C. 776. But see J. M. Henson, 10 T. C. 491. There was not here, as in the Scherer case, any testimony advanced by respondent’s witnesses that the gifts were of so great a value that their uncontrolled transfer must be assumed. Nor do we think it possible to ascribe to the capital interests, originating as they did with the parents, a value upon which some return to the children must be assumed. Cf. Claire L. Canfield, 7 T. C. 944. Although, as petitioners point out, respondent’s determination of the gift tax deficiency indicates his assumption that some property interest was created in the children, petitioners deny the value attributed to it by respondent, and on this'point our conclusion supports them. “Petitioners [in their brief] ■ concede that, if the partnership agreement merely gave the minor partners the right to receive future income if, as.and when earned by the efforts of the senior partners, such future income would clearly remain taxable to them * * As we have already concluded, so great was the proportion of the income attributable to personal services and so doubtful was the present right of the children to the control or withdrawal of any part of their interest in the business that we are not prepared to attribute any of the partnership income to a contribution of capital by the children under any theory. It follows that the income tax deficiencies must be approved, except as to the community property issue, and the gift tax deficiencies overruled. Decisions will be entered wider Rude 50. Commissioner v. Tower, 327 U. S. 280; Lustkaus v. Commissioner, 827 U. S. 293. Kenney v. Kenney, 30 Pac. (2d) 398; Estate of Joe Crail, 46 B. T. A. 658. Assuming a value for the community interests of Samuel and Solman of $84,711, and of Morris of $72,609, and gross gifts by the respective husbands and wives of $42,355.00 in the one case and $30,304.50 in the other, exclusions based on the number of donees and apparently accepted by all parties reduce the net gifts to $30,355.50, $26,350.50, and $28,-304.50. All petitioners assign as error respondent’s failure to credit them with the fuU portion of the $40,000 exemption to which they were all entitled, thus effectively allocating to these gifts whatever share of the exemptions may be required to- offset them. Since none of the net gifts at their maximum value exceeds $40,000 or wUl exhaust the exemption thus applied, no gift tax deficiency could be found on any valuation of the gifts within the range established by our findings, and any more specific figure announced by this opinion could be no more than dictum..