PAUL G. GREENE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4370. Promulgated June 17, 1946.

*Louis E. Burke, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: *Issue 1.*—The main question presented in this case is whether petitioner, and not his wife, was taxable in 1941 on one-half of the income of the Alliance Equipment Co. In name, petitioner was not a partner in Alliance. He and Hollis L. Johnson were partners in the construction firm of Johnson & Greene. But Johnson and peti-

tioner's wife were the partners of record of Alliance. And petitioner himself conceived of the idea of organizing Alliance for the admitted purpose of purchasing and leasing to Johnson & Greene road construction equipment which Johnson & Greene needed to fulfill its construction contracts and which Johnson & Greene would have purchased itself had Alliance not been formed.

The net income distributable to petitioner from Johnson & Greene in 1941 was around $30,000. About the same amount was distributable to petitioner's wife in 1941 from Alliance. Johnson's share was, of course, derived in almost equal amounts of $30,000, each, from Alliance and Johnson & Greene. Since approximately 98 per cent of Alliance's 1941 gross income consisted of rents paid by Johnson & Greene for the leased equipment, the net effect for 1941 of the creation of Alliance was to allocate to petitioner's wife one-half of the income which petitioner otherwise would have received from Johnson & Greene.

There could be no doubt that if Johnson & Greene itself had purchased the road equipment and if petitioner merely had given his wife his own interest in the equipment, constituting her, as it were, a one-fourth partner in the firm of Johnson & Greene, the transaction would have been completely ineffective to relieve petitioner of the burden of paying income tax on one-half of the distributable income of Johnson & Greene. See *Grant* v. *Commissioner*, 150 Fed. (2d) 915. For, to carry the analogy further with the facts disclosed in this record, the wife would then have contributed no capital originating with her, would have contributed absolutely nothing to the management and control of the business, and would have performed no services whatsoever except the signing of two checks. The result would have been nothing more than the mere paper reallocation of income among the family members, ineffective to relieve from tax the person, in this case petitioner, who earned or created the income. *Commissioner* v. *Tower*, 327 U. S. 280.

But petitioner did not form the traditional family partnership with his wife. He conceived of the idea of forming and did form a new and allegedly separate partnership. Instead of petitioner being a partner with his wife, he had Johnson, his partner in the construction firm, become his wife's partner in the new firm. It mattered not to Johnson that he had to go through the motion of forming a new partnership with petitioner's wife, since Johnson would have been taxable on exactly the same amount of income whether he received it only from Johnson & Greene or in approximately equal shares from both Johnson & Greene and Alliance. But, for tax purposes, it mattered to petitioner. The new partnership was to engage in an activity which was an essential factor and working part of the

business of Johnson & Greene. It was to purchase the exact road construction equipment which Johnson & Greene needed to fulfill its construction contracts and to immediately lease it for that purpose to Johnson & Greene. The financial details for the purchase were arranged on the credit and security of Johnson & Greene. In fact, it is difficult to see the financial purpose of the bank loan to Alliance, since Alliance paid for the equipment by checks dated prior to the time the bank deposited the loan in Alliance's bank account. The checks must have been issued, therefore, with only the financial backing of Johnson & Greene. A new business entity was thus set up, having as its partners petitioner's partner and petitioner's wife, and organized to perform an essential function which Johnson & Greene could have performed itself had it so wished. The new business had no office. It had no employees. It had nothing but the equipment which it purchased and immediately leased to Johnson & Greene. Whatever work was required petitioner thereafter performed. His wife was completely incapacitated with tuberculosis and was confined to a sanitarium during the last three months of the taxable year 1941. There is a suggestion in the record that petitioner was unable adequately to provide for the security of his wife by life insurance on his own life, since he too suffered from an arrested condition of tuberculosis, and that, therefore, he wished to establish a separate estate for the wife in the form of an interest in a nonhazardous business. But Alliance's business success was completely dependent upon Johnson & Greene. If Johnson & Greene was a hazardous business, as petitioner stated, so was Alliance. Moreover, Alliance is no longer in active existence. It sold all of its equipment in 1944. Instead of receiving an interest in a nonhazardous business, the wife really received cash as distributions from Alliance in the amount of $94,250, a sum which taxpayer himself periodically could have given her. She purchased with some of this money Government bonds and notes, of many of which taxpayer is the joint owner or has the right of survivorship, and has made investments identical with the kind she would have had the opportunity of making had taxpayer made periodic gifts of cash to her equal to the distributions she received from Alliance. Prior to the time Alliance made distributions of its earnings to the wife, petitioner deposited in her account $1,300 in 1941 and $800 in the first part of 1942. She extensively drew upon her account for household expenses, personal expenses, and expenses of her illness. After Alliance began to distribute its earnings to the wife, petitioner made no more personal deposits in his wife's account. She used in exactly the same way as the money which petitioner had been accustomed to give her, the distributions which she received from

Alliance, expending them for household expenses and other expenses of the type which petitioner previously had paid for before Alliance was formed. Under these circumstances, can the form which the transaction took—the separate partnership as distinguished from the typical family partnership—change the legal consequences of the economic situation as it actually existed and render petitioner immune from the tax which he would have had to pay had Alliance not been formed?

It is axiomatic that the reach of the income tax law is not to be circumscribed by refinements of legal title. The rule finds expression in the oft repeated admonitions that taxation is an intensely practical matter, concerned with economic realities; that tax consequences flow from the substance of a transaction rather than from its form; and that command over property or enjoyment of its economic benefits marks the real owner for income tax purposes. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *Helvering* v. *Clifford*, 309 U. S. 331; *Gregory* v. *Helvering*, 293 U. S. 465; *Corliss* v. *Bowers*, 281 U. S. 376. A familiar corollary to these principals is the one that an anticipatory assignment of income, however skillfully devised, is ineffective to relieve the donor of tax liability. *Harrison* v. *Schaffner*, 312 U. S. 579; *Helvering* v. *Horst*, 311 U. S. 112; *Burnet* v. *Leininger*, 285 U. S. 136; *Lucas* v. *Earl*, 281 U. S. 111. Accordingly, mere passage of title to income-producing property through devices which are valid under state law will not relieve the transferor from tax on the future income unless the passage of legal title is accompanied by a complete shift of economic benefits of ownership, direct and indirect. *Helvering* v. *Clifford*, *supra*. Thus the transferor may remain liable for tax on income even though title to the property from which it has been derived or to the income itself has "vested" in another under state law. *Lucas* v. *Earl*, *supra*; *Commissioner* v. *Harmon*, 323 U. S. 44. And where, as in the present case, an intra family transition is involved, "special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as section 22 (a) is concerned." *Helvering* v. *Clifford*, *supra*, p. 335.

Family partnership arrangements are not immune from the operation of these basic principles. *Commissioner* v. *Tower*, *supra*. Although a partnership agreement may be valid under state law, the arrangement is without tax significance if in substance and practical effect it amounts to an attempted reallocation of the taxpayer's income. *Earp* v. *Jones*, 131 Fed. (2d) 292; *Grant* v. *Commissioner*, *supra*. It is immaterial in this connection whether the business income sought to be reallocated is derived from the taxpayer's personal services, from

capital of which he remains the substantial owner, or from a combination of both sources. *Commissioner* v. *Tower, supra; Lusthaus* v. *Commissioner,* 327 U. S. 293.

The application of these fundamental principles sometimes requires that the independent existence of legally created business entities be disregarded for income tax purposes where they serve merely to shift tax liability. *Gregory* v. *Helvering, supra; Griffith* v. *Commissioner,* 308 U. S. 355; *Higgins* v. *Smith,* 308 U. S. 473; *Commissioner* v. *Tower, supra.* As the Supreme Court stated in *Higgins* v. *Smith, supra,* pp. 477–478:

* * * The Government may look at actualities and upon determination that the form employed for doing business or carrying, out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property.

And it makes no difference that such command "may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest or the maintenance of effective benefit through the interposition of a subservient agency." *Griffith* v. *Helvering, supra.*

It is, of course, true that a husband and wife may for tax purposes, as well as for other purposes, enter into a valid and effective partnership arrangement. *Commissioner* v. *Tower, supra.* But a husband can not, as petitioner attempted to do here, effectuate a severance of the normal functions of a going business and divide single tax earnings into two tax units by the simple expedient of drawing up papers. Thus, we have specifically recognized that such paper reallocation is totally ineffective to relieve the husband from the tax, even where the deflection of income is cast in the form of a separate business entity of which the husband nominally is not a member. *Wade Allen,* 6 T. C. 899; *Robert E. Werner,* 7 T. C. 39. With the wife contributing neither separate capital nor services, petitioner could not have made her a member of the partnership of Johnson & Greene for tax purposes. Nor, under the circumstances present here, could he exalt artifice and achieve the same result by the creation of an empty, though nominally separate, appendage to Johnson & Greene. "A given result at the end of a straight road," as the Supreme Court said in *Minnesota Tea Co.* v. *Helvering,* 302 U. S. 609, 613, "is not made a different result because reached by following a devious path." In accordance with the language used in the *Griffith* case, petitioner exercised his command over the income-producing road construction equipment of Alliance through the "creation of a new equitable but

controlled interest or * * * the interposition of a subservient agency." And we are empowered to disregard such a creation for tax purposes. *Gregory* v. *Helvering, supra; Griffith* v. *Helvering, supra; Higgins* v. *Smith, supra.*

Petitioner's wife was allowed to enter Alliance only by the grace of petitioner. She received the income for no other reason. Alliance was nothing more than petitioner's anticipatory device to allocate to his wife his income for tax purposes.

We hold, therefore, that petitioner's wife and Johnson did not intend to, nor did they, carry on the business of Alliance as a partnership to be recognized for income taxation purposes. The income of Alliance distributable to the wife in 1941 was created and earned by petitioner and on him the tax must fall.

*Issue 2.*—The question presented under issue 2 is whether petitioner was taxable on all of the net rental income derived from the Texaco property during the taxable year 1941. The property had been purchased with funds which belonged to petitioner alone. He also expended considerable sums of his own money in improving the property. Petitioner's wife did not contribute any of her separate funds either for the purchase of the property or for the improvements erected thereon. However, the deed of conveyance of the property by the grantor was made to petitioner and his wife as husband and wife.

In Michigan the common law rule that a conveyance to a husband and wife creates a tenancy by the entirety has persisted. *Commissioner* v. *Hart*, 76 Fed. (2d) 864. It is immaterial that the consideration for the conveyance of the property comes from one of the spouses alone. In the present case the grantor expressly conveyed the Texaco property to petitioner and his wife as husband and wife. Petitioner and his wife, as husband and wife, executed the lease of the property to the Texas Co. The checks for the rent were drawn to the order of petitioner and his wife. We hold, therefore, that petitioner and his wife owned the Texaco property during the taxable year 1941 as tenants by the entireties.

It is well settled that, where property from which income is derived is owned by husband and wife in the State of Michigan as tenants by the entireties, one-half of the income is taxable to each of them. *Commissioner* v. *Hart, supra; Herman Gessner*, 32 B. T. A. 1258; G. C. M. 19143, 1937-2 C. B. 223. If an actual tenancy by the entirety exists in the property from which income is derived, it is immaterial, for purposes of taxing the income equally to the husband and wife, that the income is received by one of the spouses alone. See *Harrison* v. *Schaffner, supra.*

At the hearing there was some question whether petitioner would press his claim that only one-half of the net rents received from the Texaco property was taxable to him alone. Respondent, therefore, did not discuss the issue on brief, but stated merely that he would endeavor to meet whatever contentions petitioner would make on this issue by way of reply brief. Petitioner, in his brief, has, and we think rightfully so, advanced the argument that only one-half of the rental income from the Texaco property was taxable to him. Respondent has not filed a reply brief. It would seem, therefore, that respondent intends to admit the merit of petitioner's contention.

We hold that petitioner is taxable on only one-half of the net rentals derived from the Texaco property during the year 1941.

*Decision will be entered under Rule 50.*