Edward A. Kerr v. Commissioner.
Kerr v. Commissioner
Docket No. 5579.
United States Tax Court
1946 Tax Ct. Memo LEXIS 5; 5 T.C.M. (CCH) 1101; T.C.M. (RIA) 46292; December 26, 1946
Chester J. McGuire, Esq., William R. Spofford, Esq., and Charles S. Jacobs, Esq., 1035 Land Title Bldg., Philadelphia 10, Pa., for the petitioner. Robert H. Kinderman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding seeks a redetermination of a deficiency in income tax in the amount of $25,578.91 for the year 1941. The issue presented is whether respondent erred in including in petitioner's income for the year in question $39,164.54, reported as income by petitioner's wife on the premise that she was a partner with petitioner in a contracting-building business. Findings of Fact Petitioner is an individual now residing in Miami Beach, Florida. During the year 1941, he resided *6 in Philadelphia, Pennsylvania, and filed his income tax return for that year with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. Petitioner is married, has a wife, a son and a daughter. In 1940 the son was eleven years old and the daughter was seven. They attended public school and came home after school. Petitioner at this time was 38 years old. On or about August 1, 1940, petitioner, in his own handwriting, drew up an instrument signed by himself and his wife, reading as follows: Elkins Park, Pa.
August 1, 1940 To whom it may concern Edward A. Kerr and Mary M. Kerr hereby enter into business partnership as of this date. Each to share and share alike in the profits or losses and liabilities of said partnership. Be it known that Edward A. Kerr is now engaged as partner in building business with Wm. F. Homiller trading as Homiller & Kerr. Mr. Homiller financed the start of Homiller & Kerr but knew nothing about the business. The business was successful despite Mr. Homiller's lack of knowledge of said business. Mr. Homiller has recently started pressing his opinions as to policy of said Homiller & Kerr which were at variance *7 with the opinions of Edward A. Kerr and it is the intention of Mr. Homiller & Mr. Kerr to terminate the partnership. Be it further known that the mother of Mary M. Kerr died last month leaving Mrs. Kerr and her brother the only heirs and a substantial inheritance is expected by Mrs. Kerr. Mrs. Kerr agrees to use this inheritance as an investment in the partnership or as a basis of credit to obtain money for the partnership. This inheritance plus the cash and credit of Edward A. Kerr should warrant the risk of starting in business as Edward A. Kerr & Co. Mrs. Kerr who has counseled Mr. Kerr in the past is to act in an advisory capacity and do such actual work in meetings together or on the job or in the office as the partners agree mutually between themselves. Witness our hands and seals this 1st day of August 1940. (Signed) Edward A. Kerr (seal) (Signed) Mary M. Kerr (seal) On July 22, 1941, petitioner and his wife executed certificates stating that they were carrying on a building and construction business in the Commonwealth of Pennsylvania under the name of Edward A. Kerr and Co. One of the certificates was filed in the office of the Secretary of the Commonwealth and the *8 other with the Prothonotary of Philadelphia County. Until just before the certificates were filed petitioner understood that filing was necessary only if the name used was an assumed name. He had been without legal advice concerning the matter, and was finally informed by a certified public accountant. Books for the business were opened shortly after its formation. They are kept on an accrual basis with a fiscal year ending August 31. Petitioner and his wife had joint bank accounts. The business maintained bank accounts in two financial institutions, and the exercise of checks on its accounts was authorized by either petitioner or his wife, Mary M. Kerr. In changing the name of the account with the Land Title Bank & Trust Company from Edward A. Kerr to Edward Kerr & Co., by letter dated August 5, 1941, petitioner requested signature cards and stated that Mary M. Kerr was his wife and partner. The signature card for Edward A. Kerr and Mary M. Kerr was dated October 9, 1941. There was never any formal or general notification that a "partnership" had been formed. Business stationery designed for use after the execution of the August 1, 1940, agreement was titled: Edward A. *9 Kerr, Builder and General Contractor, 6701 N. Broad Street, Philadelphia, Pa. The letterhead was changed about the time of the filing of the fictious name registrations in July, 1941, to read as follows: Edward A. Kerr & Co., Builders and General Contractors, 3701 Richmond Street, Philadelphia, Pa. Subsequently this address was changed to 441 West Cheltenham Avenue (Oaklane P.O.), Philadelphia, Pennsylvania. The books disclose that petitioner, on the dates indicated, made the following capital contributions to the business either in cash or from profits: September 6, 1940
$25,432.81
September 20, 1940
5,000.00
September 25, 1940
10,000.00
October 11, 1940
700.00
October 19, 1940
5,000.00
November 15, 1940
3,000.00
November 26, 1940
4.60
November 27, 1940
1,000.00
November 27, 1940
1,000.00
October 27, 1941
5,000.00
October 31, 1941
5,000.00
November 12, 1941
5,000.00
February 26, 1942
1,365.15
$67,502.56
In a Cash Receipts and Disbursements Account Book of Edward A. Kerr & Co. under cash disbursements for August, 1941, appears the following: General Ledger
1941 * * * Account
Amount
Aug. 5 Kerr Con-
struction Co.
49,600.00
Exchange Acct.
49,600.00
*10 In the Cash Receipts and Disbursements Account Book of Kerr Construction Co. under cash receipts for August, 1941, appears the following: Bank
Dep.
Net
General Ledger
Land
1941
Cash * * *
Account
Amt.
Title
Aug. 6 Mary M. Kerr - 250 pfd. shares
Pfd. cap.
E. A. Kerr - 246 pfd. shares
49,600 -
stock
49,600 -
49,600 -
The Sales Register and Journal of Edward A. Kerr & Co. discloses the following entry for August 31, 1941: Debit
Credit
Aug. 31 E. A. Kerr, Personal
24,600 -
Mary M. Kerr Personal
25,000 -
to Kerr Const. - Accts. Receivable
(receipt from Kerr Const. Co. on 8/5/41 posted to
Exchange Acct.)
49,600 -
Check issued on 8/5/41 also charged to Exchange
acct., was actually for purchase of stock in Kerr
Construction Co.
EAK - 246 shares
Mary K. 250 shares) And under "Closing Entries - 8/31/41" appears the following: Debit
Credit
Aug. 31 Profit & Loss
78,328.07
to E. A. Kerr Capital
39,164.04
M. M. Kerr Capital
39,164.03
Aug. 31 E. A. Kerr Capital
28,749.45
to E. A. Kerr Personal
28,749.45
(drawings closed into capital acct.)
Aug. 31 M. M. Kerr Capital
25,000 -
to M. M. Personal
25,000 -
(drawings closed into capital acct.)
*11 The General Ledger of Edward A. Kerr & Co. in an account entitled "E. A. Kerr - Personal" discloses the following: 1941
Debits
1941
Credits
Aug. 31 Stock in Kerr Const. Co.
24,600 -
Aug. 31 to close into capital
28,749.45 And in an account entitled "E. A. Kerr - Capital" it discloses the following: 1941
Debits
1941
Credits
Aug. 31 Stock in Kerr Const. Co.
24,600 -
Aug. 31 Profit
39,164.04
31 Personal Drawing
4,149.45 And in an account entitled "E. A. Kerr - Personal," it discloses the following: 1941
Debits
1941
Credits
Aug. 31 Stock in Kerr Const. Co.
24,600 -
Aug. 31 to close into capital
28,749.45 And in an account entitled "Mary M. Kerr - Capital," it discloses the following: 1941
Debits
1941
Credits
Aug. 31 Stock in Kerr Const. Co.
25,000 -
May 8
1,000.00
May 31
1,500.00
Aug. 29
13,000.00
Aug. 31 Profit
39,164.04 And in an account entitled "M. M. Kerr, Personal," it discloses the following: 1941
Debits
1941
Credits
Aug. 31 Stock in Kerr Const. Co.
25,000 -
Aug. 31 to close into capital
25,000 -
In the General *12 Ledger of the Kerr Construction Co. in an account entitled "Capital Stock (Preferred)" appears the following: 1941
Items
Credits
Aug. 6
Mary M. Kerr - 250 shares
Edward A. Kerr - 246 shares
49,600.00
At the time of the execution of the August 1, 1940, instrument, petitioner's wife was a beneficiary under her mother's estate. The first and final accounting of the estate of the wife's mother made in December of 1941, resulted in the distribution to her of stocks and bonds stated at that time to be of a value of $7,864. She also received cash of $17.62. There was also some real estate in the mother's estate, not included in the accounting. By note dated Augst 29, 1941, Mary M. Kerr promised to pay on demand to herself at the Liberty Title and Trust Company $13,000 with 5 percent interest. The note was endorsed by Mary M. Kerr, and on the reverse side listed bonds posted as collateral in the face amount of $22,500. A payment on account of principal of $3,165 was also indicated on the back as having been made "10/30." Payment of the balance of $9,835 was made on December 31, 1941. Payment was by check on an outside bank. The $3,165 payment was effected from *13 the proceeds of the redemption of one of the bonds held as collateral. The character of the business is such that capital in the form of cash is not of prime importance. Financing is handled by means of progress payments. The personal worth of operators in the business might become of some importance if the regular lines of credit fail. Prior to 1937 petitioner had a varied business experience, including early experience in the speculative building business. He had operated as a proprietor and employee, the latter capacity being sometimes as salesman. In 1937 he and William F. Homiller entered into a partnership for the conduct of a business engaged in speculative building. The business operated until 1939, when it was mutually decided to liquidate. In that partnership petitioner contributed no working capital, Homiller contributed $10,000. In the beginning, Homiller and petitioner shared equally, but before dissolution petitioner's interest was increased to 60 percent. Petitioner made more than $50,000 from Homiller and Kerr, some of which was not received until after the dissolution of that partnership. Petitioner, through his connections with the National Home Builders' Association, *14 Philadelphia Defense Council, and Philadelphia Housing Association procured the business of the construction of a large project known as the Richmond project. Petitioner arranged the financing of the Richmond project. Credit was obtained from the Land Title Bank & Trust Company for the loan to the Kerr Construction Company by means of a commitment from the New York Life Insurance Company. Kerr Construction Company was a corporation, the stock of which was owned equally by petitioner and his wife. It was upon this commitment that the Land Title Bank & Trust Company relied in the event of default by the Kerr Construction Company. The Land Title Bank & Trust Company loaned approximately $3,100 per house when completed and $2,300 before completion. Kerr Construction Company owned the houses and land on the Richmond project. Edward A. Kerr & Co.'s only interest in the Richmond project was the building of houses under contract. Edward A. Kerr & Co. was paid sufficient money during the progress of the work to discharge its obligations to subcontractors and laborers, and was paid in full on completion of the houses. The project was guaranteed by the United States Government under Title VI *15 of the National Housing Act. Edward A. Kerr & Co. was paid less than its contract price for most of the houses for the Richmond project but eventually made money notwithstanding the reduced price. Petitioner drew the rough plans and wrote the specifications for the houses built by Edward A. Kerr & Co. Petitioner dealt with the superinendents on the job and checked to ascertain if the specifications were adhered to. The activities of Mary M. Kerr, befor and after the creation of Edward A. Kerr & Co., were substantially the same. She had no actual knowledge of the construction or physical superintendence of the work of Edward A. Kerr & Co., and was not concerned with the execution of the plans for the houses it built. The total time consumed by the services rendered by her to the company was more than one week but was not considerable in the aggregate. It consisted of sporadic services usually varying from fifteen minutes to three hours a day. During the time in question petitioner's wife was engaged in the normal responsibilities and duties of a housewife and mother of two children. She had domestic help two or three days a week. Prior to August 1, 1940, she had never been in *16 business in a formal way. Part of her activity in the business was related to the interior decorating of the properties. She kept herself informed on this work by visiting the sample homes of other builders and by reading news-stand periodicals on the subject. In some instances it was possible for petitioner's wife to view and compare the work of competitors with less difficulty than petitioner would have had. She persuaded petitioner to accept her views on painting interior walls and installing gas heat on a group project. In addition to the Richmond project which involved the construction of 410 houses, Edward A. Kerr & Co. constructed 25 or 26 houses on Landis Street at one time, and a similar number on a continuation of that project; and there was also a construction of 48 houses in the same neighborhood. Petitioner's wife was interested in all the projects. She assisted in locating possible building sites and considered with him the advisability of their purchase. She would also make suggestions about the plans which petitioner drew up. The construction of the houses was under the supervision of a superintendent employed by the company. Neither petitioner nor his wife had *17 any direct participation in sales which were handled by a sales department. Mary M. Kerr made the following cash withdrawals from Edward A. Kerr & Co. in 1942: June 28
$ 2,500
June 28
2,500
August 12
10,000
Total
$15,000
Petitioner made the following cash withdrawals from Edward A. Kerr & Co.: December 4, 1940
$ 1,000.00
February 10, 1941
100.00
April 29, 1941
500.00
May 2, 1941
400.00
May 5, 1941
500.00
June 9, 1941
57.42
August 6, 1941
1,413.50
January 2, 1942
218.54
February 4, 1942
75.00
February 16, 1942
200.00
February 28, 1942
2,010.00
March 2, 1942
69.98
April 2, 1942
500.00
June 24, 1942
5,000.00
June 28, 1942
2,500.00
June 28, 1942
2,500.00
July 6, 1942
7,000.00
July 11, 1942
11,650.52
August 5, 1942
200.00
August 12, 1942
30,000.00
August 18, 1942
184.60
$66,079.56
Balance sheet as of August 31, 1941, for Edward A. Kerr & Co. shows cash of $42,951.35 among its assets. As of August 31, 1942, a similar balance sheet shows cash of $9,764.71. The profits of Edward A. Kerr & Co. for its fiscal year ended August 31, 1941, were $78,328.07, of which $39,164.03 was credited to the capital account *18 of petitioner and an identical amount to the capital account of his wife. A similar practice was followed in distributions of the profits in later years. For the fiscal year ended August 31, 1941, a partnership return of income on Form 1065, was filed by Edward A. Kerr & Co. Petitioner and his wife filed individual returns on which were reported as taxable income the distributive shares of the profits reported by Edward A. Kerr & Co. This was the first time the wife had filed a Federal income tax return. In his notice of deficiency respondent stated: In accordance with section 22(a) of the Internal Revenue Code, it has been determined that you are the sole proprietor or owner of the business conducted under the name of Edward A. Kerr and Company and the alleged partnership is merely a device for the allocation of your income between you and Mrs. Kerr, with retention of control by you. Petitioner's wife contributed neither capital originating with her nor vital services to the business of Edward A. Kerr & Co. No partnership in that business between petitioner and his wife existed for income tax purposes. Opinion Although a genuine effort is made to *19 create a more favorable picture, the sole conclusion to be elicited from this record is that the business in which the ostensible partnership was engaged was preponderantly a personal service operation. It did not own the land on which it constructed the houses, nor the houses themselves. It was kept in funds by anticipatory payments as the work progressed. Petitioner's capacity as architect, engineer, and construction supervisor was the source of the business income. No need for any sizeable capital is shown, and none is shown to have been used. See M. M. Argo, 3 T.C. 1120, affirmed (C.C.A., 5th Cir.), 150 Fed. (2d) 67, certiorari denied, 326 U.S. 762. If there was any actual deposit of funds in the business by petitioner's wife - a circumstance not definitely established by the record - its necessity in the business or use in the operations cannot be inferred. The largest credit appears after an amount almost twice as large had apparently been advanced for her account, and at about the same time as the first distribution of earnings. It was without apparent purpose or effect as far as that business was concerned. At most it was no more than *20 a gesture which cannot give reality to so practical an activity as the conduct of a business enterprise. It does not suffice to alter the inference that it was petitioner's services and possibly some small amount of petitioner's funds which earned the income in question. Earp v. Jones (C.C.A., 10th Cir.), 131 Fed. (2d) 292, certiorari denied, 318 U.S. 764; Paul G. Greene, 7 T.C. 142. We cannot find that petitioner and his wife did "really and truly intend * * * to join together" in the operation of a business. Commissioner v. Tower, 327 U.S. 280, 287. Decision will be entered for the respondent.