JERRY MAIATICO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10393. Promulgated February 9, 1949.

*John E. Shea, Esq.*, and *George E. McMurray, Jr., Esq.*, for the petitioner.

*Elmer L. Corbin, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge*: The respondent contends that the net rental income reported in the 1942 and 1943 partnership returns as distributable to petitioner's wife as trustee for each of their four minor children is taxable to petitioner under section 22 (a) of the Internal Revenue Code and the rule enunciated in *Helvering* v. *Clifford*, 309 U. S. 331, and *Harrison* v. *Schaffner*, 312 U. S. 579. He further contends that the agreement of January 11, 1941, was ineffective to constitute Rose Maiatico, as trustee, a partner with the owners of the other fractional interests in the various properties held by them.

Although the petitioner maintains that the January 11, 1941, agreement created a valid partnership for income tax purposes, his contention, upon which most of his argument is based is that income derived from a fractional interest in real property owned absolutely by petitioner's wife, as trustee, is not taxable to petitioner, citing *George K. Brennen*, 4 T. C. 1260; *Paul G. Greene*, 7 T. C. 142; and *Edwin F. Sandberg*, 8 T. C. 423. In those cases it was held that income derived from real property held by husband and wife as tenants by the entirety was taxable one-half to each spouse. The petitioner concedes that the tenancy of the petitioner and his wife, as trustee, is a tenancy in common. He contends, however, that the rule is the same with respect to the income therefrom.

It is well settled that, in order to sustain a family partnership for tax purposes, it must be shown that the members of the family taken into the partnership either invested capital originating with them or substantially contributed to the control and management of the business, or otherwise performed vital additional services, or did all of these things. *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293. The capital contributed to the partnership was transferred by petitioner to his wife, as trustee, as a gift, except for the fractional interest in the 2501 Q Street property, for which the wife as trustee gave her note in the amount of $20,973.20. The trust estate provided no income and presumably the note was to be paid out of the income or proceeds of the property if and when improved and rented or disposed of.

The children, beneficiaries of the trusts, were minors and there is no evidence that they contributed any services whatsoever. As to the services performed by petitioner's wife, the evidence is somewhat contradictory. The evidence does not disclose that she substantially contributed to the control and management of the business, or otherwise

performed vital additional services. When asked what the work of his wife consisted of with respect to the business connected with the properties involved, petitioner stated:

Well, she go around on the job. She come out to see how everything getting along, just like the rest. They was doing the same thing. I was doing the same thing myself. We had a superintendent on the job. We had engineer on the job. And anyone was practically doing anything except watching the job grow.

The partnership returns disclose that petitioner's wife and Cecelia E. Goodman, Katheryn E. Lemm, and Mathilda M. Kirchner each contributed 5 per cent of their time to the business. The returns also disclose that the last named three partners were not residents of the District of Columbia, their addresses being given as Columbia, Missouri, and/or Minneapolis, Minnesota. Whatever services were rendered by the wife were minor and of such a character as services often performed by a wife interested in the business affairs of her husband. On the other hand, the record discloses that whatever essential services were required in the control and management of the properties and in their improvement and securing the financing therefor were performed by petitioner, Lemm, and former coowners whose interests were acquired. After the three properties from which the income was derived in the taxable years were improved, two were operated and managed by rental agencies, and the other required no management or services, the tenant taking care of the same.

In *Commissioner* v. *Tower, supra*, the Supreme Court stated that if the end result of the creation of a family partnership, though valid under state law, is that income produced by the husband's efforts continues to be used for the same business and family purposes as before the partnership, failure to tax it as the husband's income would frustrate the purpose of section 22 (a), and that "By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided."

In *Helvering* v. *Clifford, supra*, the Supreme Court stated:

* * * Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus. * * * In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22 (a) is concerned.

Herein the trustee is the wife of the grantor. The petitioner's investment in the properties involved was comparatively small except his investment in the 2501 Q Street property, the cost to him, according to his testimony, of four-fifths of his one-half undivided interest being $20,973.20. The 2501 Q Street property, the 3130 Wisconsin Avenue property, and the 1359 Connecticut Avenue property were improved with borrowed funds. On the Q Street property there were first and second trusts of approximately $330,000. On the Wisconsin Avenue property a construction loan of $700,000 was made. On the Connecticut Avenue property there were first and second mortgages of approximately $31,000 and an additional amount of $8,280 was borrowed to finance the construction of the building thereon. During the years 1941 to 1943, payments aggregating $93,300 out of the income from the property were made on the principal of the loans outstanding on the properties. At the outset, it was known that the income from the properties would necessarily have to be used for the payment of the loans and interest thereon, and that there would be little income, if any, which the trustee would receive and retain under her dominion and control. Neither did she have dominion and control of the corpus of each trust. The undivided interests in the properties were transferred to the trustee with the understanding that title of record would be held by a straw "authorized to hold and deal with the property and/or proceeds without disclosing the interests of silent co-owners or designating that it was so held." The petitioner held record title as straw to the Wisconsin Avenue and the 2501 Q Street properties. None of the conveyances to trustee were recorded; neither were the trust agreements recorded. The net income allocated to the wife as trustee was not paid to her. She merely received $3,000 in 1942 and $3,200 in 1943, which amounts were used for the payment of income taxes for the trusts and insurance for the beneficiaries. Obviously, the trustee had no funds with which to pay such items. Petitioner, as well as Lemm, received a salary of $3,600 in 1942 and 1943. Thus the income allocated to petitioner and his wife as trustee, which was produced by the efforts of petitioner and others, not including his wife or children, continued to be used for the same business and family purposes as before the creation of the trusts and the partnership. So far as dominion and control over the properties and business were concerned, or so far as the use of the income derived therefrom was concerned, the creation of the trusts or the partnership made no substantial change.

The cases cited by petitioner are distinguishable. None of them disclose the peculiar circumstances involved herein. In each such

case title to the property involved was taken and held in the name of taxpayer and his wife. The wife had control in the sense that no conveyance thereof could be made without her signature and consent. In the *Greene* case, the checks for the rent of the property involved were drawn to the order of the taxpayer and his wife. In the *Brennen* case, the moneys derived from the coal lands were deposited in a joint account of taxpayer and his wife designated "Special." The wife assisted in the office work in connection with the mining operations. She made up pay rolls, signed checks, and took orders for the sale of coal and coke in the absence or disability of the taxpayer or either of the clerks. In the *Sandberg* case, the wife, among other things, always answered the telephone at their home, which was used as an office, took messages, handled invoices, and collected rents. When the properties were sold, the receipts were placed in bank accounts in the joint names of taxpayer and his wife, to which each had full access.

In *Euterpe Economos* v. *Commissioner*, 167 Fed. (2d) 165, the taxpayer, sole owner of a cafeteria, created a trust for each of her minor children, naming her sister as trustee and agreeing to operate the cafeteria as partner with the trustee. Each trust received a one-fourth interest in the cafeteria, but neither the trustee nor the beneficiaries performed any services for the business. The court therein stated, in part, as follows:

* * * A gift of an interest in a family business, whether absolute or in trust, which makes no real change in the economic situation of the group or in the control or management of the business will· not reduce the obligations of the donor to account for· and pay income tax on the enterprise to the same extent as before the gift was made.

That petitioner transferred by deed an undivided ·interest in the properties to the trustee and that she thereby became a tenant in common is not determinative under the circumstances herein. As stated in *Paul G. Greene, supra*, cited by petitioner:

* * * mere passage of title to income-producing property through devices which are valid under state law will not relieve the transferor from tax on the future income unless the passage of legal title is accompanied by a complete shift of economic benefits of ownership, direct and indirect. *Helvering* v. *Clifford, supra*. Thus the transferor may remain liable for tax on income even though title to the property from which it has been derived or to the income itself has "vested" in another under state law. *Lucas* v. *Earl, supra; Commissioner* v. *Harmon*, 323 U. S. 44.

We hold that the partnership, so far as petitioner's wife as trustee is concerned, is not recognizable for income tax purposes, and that petitioner is taxable under section 22 (a) of the Internal Revenue Code

on the income of the partnership for the taxable years distributable to petitioner's wife, as trustee for their four children, as shown in the partnership returns.

Reviewed by the Court.

*Decision will be entered for the respondent.*