Pasquale and May A. Colabelia v. Commissioner.
Colabelia v. Commissioner
Docket No. 57719.
United States Tax Court
T.C. Memo 1958-136; 1958 Tax Ct. Memo LEXIS 91; 17 T.C.M. (CCH) 704; July 15, 1958
*91 1. The principal petitioner was engaged in the waste paper business acting as a packer and sub-broker. Respondent discovered that petitioner had cashed substantial amounts of checks at a check cashing agency. Respondent circularized the makers of the checks and determined that petitioner had receipts in his business in excess of the amounts reported on his returns during the years herein involved. Respondent's determination that the unreported receipts were additional income to petitioner sustained, with certain adjustments. 2. Respondent's determination that certain other checks cashed by petitioner on which no information from the makers could be obtained, were additional unreported income, sustained. 3. Several parcels of realty were held jointly in petitioner's and May's names, or in May's name alone. Respondent determined that the income from these properties was taxable to petitioner. Held, petitioner is taxable on one-half of the income from the jointly-held properties, and on none of the income from the properties held in May's name. Held, further, petitioner has failed to establish that there were additional expenses to offset the rental income. 4. Held, petitioner failed *92 to establish that he suffered a deductible fire loss in 1947. 5. Held, a portion of the deficiencies in each of the years in issue was due to fraud with intent to evade tax. Held, further, the deficiencies for 1946 and 1947 are not barred by the statute of limitations. 6. Held, respondent properly determined additions to tax for each of the years in issue, as provided by sections 294(d)(1)(A) and 294(d)(2), I.R.C. 1939, subject to any adjustments made necessary by our decisions on the above issues. Joseph Steinberg, Esq., and Donald Steinberg, Esq., for the petitioners. William G. O'Neill, Esq., and Jules W. Breslow, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax of Pasquale and May A. Colabella as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
293(b)
294(d)(1)(A)
294(d)(2)
1944
$49,778.65
$24,889.33
$4,977.87
$2,986.72
1945
41,082.03
20,541.01
4,112.20
2,467.32
1946
40,626.39
20,313.20
4,062.64
2,437.58
1947
21,836.63
10,918.31
2,183.66
1,310.20
Respondent's determination with respect to May was based on the premise that she had filed returns jointly with Pasquale for the period in issue. Respondent *93 has since conceded that May did not file a joint return with Pasquale. Certain concessions were made by petitioner. The issues remaining for decision are as follows: 1. Whether petitioner failed to report a portion of his income from his waste paper business during each of the years in issue. 2. Whether petitioner realized unreported income arising out of certain checks cashed by him during the years in issue. 3. Whether petitioner had unreported rental income and capital gains during the years in issue. 4. Whether petitioner incurred a deductible fire loss in 1947. 5. Whether a portion of the deficiencies for each of the years herein involved was due to fraud with intent to evade tax. 6. Whether the deficiencies for 1946 and 1947 are barred by the statute of limitations. 7. Whether respondent properly determined additions to tax for each of the years in issue, as provided by sections 294(d)(1)(A) and 294(d)(2). Findings of Fact Some of the facts were stipulated and the stipulation of facts, together with the exhibits attached thereto are incorporated herein by this reference. Pasquale Colabella, and his wife, May, reside at 34 East 61st Street, New York, New York. Individual income *94 tax returns for each of the years in issue were filed by Pasquale with the former collector of internal revenue for the first district of New York. May filed no returns for any of the years in issue. During the years involved herein petitioner was engaged in the operation of a waste paper business in New York City, doing business as the South Street Paper Stock Co. Until February 17, 1947 the location of petitioner's business was 184 South Street. In the course of his waste paper business petitioner acted as a "packer" in that he collected and purchased loose paper stock and processed it into bales for sale. He also acted as a "sub-broker," in which capacity he purchased paper already in bales and resold it to paper brokers, receiving a commission based upon a percentage of the sale price. Petitioner employed one man to operate his baling machine and one truck driver. Petitioner did not employ a bookkeeper during the years involved herein. In 1947 Abraham L. Freeman, a certified public accountant, prepared a set of books to start an accounting system for petitioner, with the idea of auditing the books monthly. However, within a few months this arrangement proved unsatisfactory because *95 petitioner did not maintain the necessary records for the accountant to perform an audit. Petitioner's returns for the years in issue were prepared without audit by an employee of Freeman's with figures supplied by petitioner from certain records he kept on scraps of paper and from a sales book. A fire occurred at petitioner's business location on February 17, 1947, destroying the contents of the building, including any business records kept by him. From February 17, 1947, until the end of the period in issue petitioner conducted his business from his father's business location at 284 Front Street. The records which petitioner kept for this period were lost. In the late 1940's the Internal Revenue Service discovered that petitioner had been engaged in 1944 through 1947 in cashing substantial amounts of checks at a check cashing agency in New York City. In the ensuing investigation, agents circularized the makers of the checks cashed by petitioner in an effort to obtain information relating to the nature of the transactions in which the checks were drawn. On the basis of information received from makers of checks which petitioner had cashed, it was determined, and has been stipulated *96 by the parties, that during the years involved herein, petitioner made sales in his waste paper business in at least the following amounts: Year
Sales (receipts)
1944
$98,148.39
1945
83,834.60
1946
87,229.78
1947
71,600.75
On the income tax returns filed by petitioner for the years 1944 through 1947, the following amounts were reported as total receipts, net cost of goods sold, and gross profit, of South Street Paper Stock Co.: Net
Total
Cost of
Gross
Year
Receipts
Goods Sold
Profit
1944
$27,591.17
$23,115.87
$4,475.30
1945
32,838.30
27,344.19
5,494.11
1946
31,450.50
25,927.36
5,523.14
1947
45,632.45
39,953.00
5,679.45
During the years in issue petitioner understated sales in at least the following amounts: Amount of
Year
Understatement
1944
$70,557.22 *
1945
50,996.30
1946
55,779.28
1947
25,968.30 Respondent determined that the above understatements of sales constituted unreported income of petitioner. In addition to the cost of goods sold which petitioner reported on his income tax returns, petitioner *97 had additional cost of goods sold as follows: Additional
Cost of
Year
Goods Sold
1944
$17,000
1945
13,000
1946
14,000
1947
6,000
Petitioner's gross profit from operations of South Street Paper Stock Co. during the years involved herein, was as follows: Year
Gross Profit
1944
$58,032.52
1945
43,490.41
1946
47,302.42
1947
25,647.75
In the course of their investigation respondent's agents were unable to obtain sufficient information to ascertain the nature of the transactions which gave rise to the drawing of the following checks which petitioner cashed at the check cashing agency: CHECKS CASHED BY PASQUALE COLABELLA DURING
THE YEARS 1944 TO 1947, INC.
Amounts
Maker of Check
Address
1944
1945
1946
1947
Colabella Bros.
503-505 W.
$ 56.78
$ 726.38
33rd St., NYC
Frank Colabella
Unknown
448.69
$ 121.77
J & J Paper Stock
Unknown
42.50
781.34
877.02
$1,403.19
Logan Paper Stock Co.
Unknown
1,140.96
Providence Waste Paper
Foot of New
Co.
Dock St.
Brooklyn, N.
1,598.57
4,784.37
236.25
37.50
Y.
Deca Co.
160 South St.,
725.35
NYC
Leonard Esperesia
Unknown
1,103.30
Totals
$2,146.54
$6,828.44
$1,839.65
$3,269.34 Respondent determined that the above checks constituted unreported income to petitioner. In the course of their investigation, respondent's agents discovered *98 that several places of realty were held in petitioner's and/or May's names, or held in the names of petitioner and one Gaccione. Petitioner did not report any income from these properties during the years involved herein. The locations of the realty, the names in which it was held, gross rental income therefrom, taxes and interest paid, and depreciation allowable with respect to each piece of realty is as follows: SCHEDULE OF GROSS RENTAL INCOME, TAXES AND INTEREST PAID AND
DEPRECIATION ALLOWABLE DURING THE YEARS 1944 THROUGH 1947.
Gross
Rental
Income
Address
Property Held In
Name or Names of
1944
176 South St., N.Y.C.
Pasquale and May Colabella
$2,450.00
184 South St., N.Y.C.
Pasquale and May Colabella
840.00
265 Front St., N.Y.C.
Pasquale and May Colabella
23 Worth St., N.Y.C.
Pasquale and May Colabella
34 East 61st St., N.Y.C.
Pasquale and May Colabella
284 Front St., N.Y.C.
Jointly owned by Pasquale
Colabella and Gaccione
1145 65th St., Bklyn, N.Y.
May A. Colabella
720.00
1073 68th St., Bklyn, N.Y.
May A. Colabella
1,980.00
1075 68th St., Bklyn, N.Y.
May A. Colabella
3,552.00
Gross Rental Income
$9,542.00
Total Depreciation
$2,681.80
Taxes
1,595.00
Interest
1,185.03
Total Depreciation, Taxes, and
Total Depreciation, Taxes, and
5,461.83
Interest **
Interest **
Rental Income after
Rental Income after
$4,080.17
Depreciation, Taxes and Interest
Depreciation, Taxes and Interest
*99 SCHEDULE OF GROSS RENTAL INCOME, TAXES AND INTEREST PAID AND
DEPRECIATION ALLOWABLE DURING THE YEARS 1944 THROUGH 1947.
Address
1945
1946
1947
176 South St., N.Y.C.
$ 2,700.00
$ 1,575.00
184 South St., N.Y.C.
840.00
490.00
265 Front St., N.Y.C.
1,200.00
1,200.00
$ 1,200.00
23 Worth St., N.Y.C.
1,080.00
4,320.00
4,320.00
34 East 61st St., N.Y.C.
4,477.50
284 Front St., N.Y.C.
98.96
1145 65th St., Bklyn, N.Y.
720.00
1,140.00
95.00
1073 68th St., Bklyn, N.Y.
1,980.00
1,980.00
1,980.00
1075 68th St., Bklyn, N.Y.
3,552.00
3,552.00
3,552.00
Gross Rental Income
$12,072.00
$13,817.00
$15,723.46
Total Depreciation
$ 3,087.80
$ 2,315.89 *
$ 1,864.33
Taxes
2,478.33
3,136.25
3,718.50
Interest
1,271.44
2,015.53
2,263.82
Total Depreciation, Taxes, and
6,837.57
7,467.67
7,846.65
Interest **
Rental Income after
$ 5,234.43
$ 6,349.33
$ 7,876.81
Depreciation, Taxes and Interest
EXPENSES ATTRIBUTABLE TO EACH PIECE OF REALTY
Address
1944
1945
1946
1947
176 South Street, N.Y.C.
$2,310.86
$2,305.05
$1,184.54
184 South St., N.Y.C.
770.97
770.97
310.65
265 Front St., N.Y.C.
753.22
1,003.50
$ 969.75
23 Worth St., N.Y.C.
628.33
2,288.98
2,088.00
34 East 61st St., N.Y.C.
2,621.87
284 Front St., N.Y.C.
1145 65th St., Bklyn, N.Y.
300.00
300.00
600.00
87.03
1073 68th St., Bklyn, N.Y.
860.00
860.00
860.00
860.00
1075 68th St., Bklyn, N.Y.
1,220.00
1,220.00
1,220.00
1,220.00
Total Depreciation, Taxes, and
Interest
$5,461.83
$6,837.57
$7,467.67
$7,846.65
*100 In addition to the rental income indicated above, petitioner had net rental income from properties located at 230 Water Street and 230 South Street, New York, and held jointly in the names of petitioner and Gaccione, in the following amounts: Net
Year
Rental Income
1944
0
1945
$251.25
1946
342.72
1947
109.21
Petitioner failed to report rental income from any of the above listed properties during the years involved herein. Respondent determined in his deficiency notice that petitioner and May had unreported rental income from all of the above properties in the following amounts: Unreported
Year
Rental Income
1944
$ 3,298.37
1945
6,648.04
1946
7,498.47
1947
10,193.08
In November 1946, petitioner and Gaccione sold jointly-held realty located at 230 Water Street, New York. Petitioner realized long-term capital gain in the amount of $2,454.34, which he failed to report on his 1946 income tax return. In the notice of deficiency respondent determined the gain to be $12,159.38. In 1947 the realty located at 1145 65th Street and held in the name of May A. Colabella was sold at a gain of $1,176.67. This gain was not reported by petitioner or May. In the notice of deficiency respondent determined the gain to be $9,596.67. *101 On his 1947 income tax return petitioner claimed a deduction for a fire loss as a result of the fire which occurred on February 17, 1947, at 184 South Street. Petitioner's reported loss was as follows: Sprinkler system
$2,790.00
Baler press
1,350.00
Sundry Equipment
467.65
Total
$4,607.65 Respondent determined that the above claimed losses were not allowable. Petitioner has suffered from mental disturbances since 1929 and has periodically undergone electric shock treatments. He underwent electric shock treatment series during 1946 and 1947. Petitioner was indicted in the District Court of the United States for the Eastern District of New York for wilfully and knowingly attempting to defeat and evade income taxes for the years 1946 and 1947. He pleaded guilty to the charge relating to 1947, and was sentenced to three months imprisonment. Petitioner executed Consents Fixing Period of Limitation Upon Assessment of Income and Property Tax for the years 1944 and 1945, extending to June 30, 1955, the period within which assessment might be made with respect to such years. No such Consents were filed for the years 1946 and 1947. The notice of deficiency involved herein was mailed on or about February *102 9, 1955. A part of the deficiency for each of the years in issue was due to fraud with intent to evade tax. Petitioner filed false or fraudulent returns with intent to evade tax for the years 1946 and 1947. Opinion The first issue is whether petitioner failed to report a portion of his income from his waste paper business during each of the years in issue. Respondent determined that petitioner's understatement of sales, as revealed by an analysis of his check cashing activities, constituted additional income to petitioner. Petitioner admits that total sales were understated in his returns, but argues that the income from his business was fully reported. Petitioner claims that he reported his packing business sales in full, but that he reported only the commissions on his brokerage sales. He alleges that brokerage sales on which only commissions were reported, accounted for about 75 percent of his total sales, and that this fact would account for the large understatement of sales on his income tax returns. In short, petitioner argues that he had unreported expenses representing cost of goods sold, offsetting the admitted amount of unreported sales. Regardless of what percentage of petitioner's *103 sales was from brokerage transactions and what percentage was from packing transactions, it is clear that, whether or not petitioner's explanation is entirely credible and worthy of belief, costs of goods sold were involved in both types of sales transactions. "The taxpayer's costs and other factors which would lessen his tax liability are peculiarly within his own knowledge. Accordingly, the law has placed upon him the burden of going forward with the evidence once the Government has established receipts in excess of those reported in his income tax return. * * * "* * * In such a case the Government, having shown unreported income, is aided by the presumption that the deductions and exclusions listed by a taxpayer in his return are all that exist. This presumption is based upon reasonable experience (taxpayers would not knowingly fail to report all valid deductions), * * *." [United States v. Bender, 218 Fed. (2d) 869, 871, certiorari denied 349 U.S. 920.]
Petitioner has not submitted any records or other direct evidence to establish that the "cost of goods sold" on his income tax returns included only costs in relation to his packing business. Any records he may have had were either *104 destroyed in the fire which occurred on February 17, 1947, or were lost. However, as noted above, petitioner was entitled to a deduction for cost of goods sold in relation to both brokerage and packing business sales. We are satisfied that petitioner in fact incurred such costs in excess of the amounts reported during the years involved herein. *
Should the respondent's determination be sustained on this issue, petitioner's resulting gross profit percentage [1] *105 during 1944 through 1947 would be approximately 76%, 67%, 70%, and 44% respectively. Petitioner's testimony and testimony of witnesses in his behalf established to our satisfaction that petitioner could not have realized gross profit to the extent shown above. Using the record before us as a guide, but weighing heavily against petitioner because of his own inexactitude, we have concluded that petitioner had costs of goods sold, in addition to the costs shown on his returns, in the amounts set forth in the findings of fact. Cohan v. Commissioner, 39 Fed. (2d) 540. The next issue is whether the respondent properly determined that amounts of checks which petitioner cashed, other than the amounts discussed in the first issue, constituted unreported income to petitioner. In an analysis of the checks cashed by petitioner, respondent's agents were unable to ascertain the nature of the transactions which gave rise to the making of certain checks. Due to this lack of information, respondent determined that these checks constituted unreported income to petitioner. Petitioner's uncorroborated and self-serving testimony with respect to these checks was unconvincing. We hold that petitioner has failed to carry his burden of proof, and respondent's determination is sustained. The next issue is whether petitioner had unreported net rental income and capital gains during the years herein involved on various parcels of realty held in his name jointly with either May or Gaccione, or held solely in May's name. Petitioner admits that rental income *106 from the properties located at 230 Water Street, 230 South Street, and 284 Front Street, in the amounts set forth in the findings of fact was not reported. Petitioner also admits that capital gain in 1946 on the sale of the property at 230 Water Street was not reported. However, petitioner argues that he is not taxable on income or capital gains on any other property held in his and May's names jointly, or held solely in May's name, on the grounds that May was the true owner of the property. Petitioner alternately argues that, if he is taxable on income of the aforementioned property, there was no net rental therefrom; and that, if he is taxable on the capital gain, there were capital expenditures which so increased the adjusted basis of the property that the sale resulted in a net loss. Respondent, having conceded on brief that petitioner and May did not file joint income tax returns for the years herein involved, now contends that the income and capital gain on the properties is taxable wholly to petitioner because petitioner was the "true owner" of t he properties. We shall first discuss the property held by petitioner and May jointly. The record does not make it clear whether the *107 funds used to purchase the various properties were joint funds, petitioner's funds, or May's funds. This lack of evidence need not deter our conclusion, however, for the source of funds used to purchase property is not the determinative factor in an issue of this nature. Paul G. Greene, 7 T.C. 142. In New York the common law rule, that a conveyance to a husband and wife creates a tenancy by the entirety, has persisted. Prudential Insurance Co. v. Bickford, 40 N.Y.S. 2d 376 (1943); Lerbs v. Lerbs, 129 N.Y.S. 903 (1911). The source of the consideration for the conveyance of the property is immaterial. We hold that petitioner and May held the properties which were in their joint names as tenants by the entirety. It is well settled law in New York, Hiles v. Fisher, 144 N.Y. 306, 39 N.E. 337, and recognized by the respondent, I.T. 1555, II-1 C.B. 142, that where property is held in the joint names of a husband and wife, each is entitled to one-half of the rents and profits. Where, under state law the wife is entitled to share equally with her husband in the income from jointly-held property, the respondent has consistently stated that one-half of the income is taxable to the wife, *108 I.T. 3783, 1946-1, @C.B. 84; I.T. 3743, 1945 C.B. 142; cf. I.T. 3878, 1947-2 C.B. 57. Petitioner's and respondent's present positions are contrary to respondent's prior rulings and to a number of prior cases, including Edwin F. Sandberg, 8 T.C. 423; and Paul G. Greene, supra.
The record does not make it clear whether petitioner or May received and used the rental income from the jointly-held properties, or whether they shared the income therefrom. In any event, since we have found that petitioner and May were tenants by the entirety, and that each had a legal right to one-half of the income from the property, it is immaterial, for purposes of taxing the income equally to the husband and wife, that one or the other may in fact have received more than one-half of the income. Harrison v. Schaffner, 312 U.S. 579. It is true that in certain instances legal title may be disregarded in determining the taxability of income from property. If one other than the legal titleholder exercised such dominion and control over the property and the income therefrom that it was apparent there was no intention that the nominal titleholder have any direct beneficial interest therein, the income *109 from the property will be taxable to the one exercising the control over the property and receiving the benefits from it, i.e. the "true owner" of the property. Apparently both petitioner and respondent seek to have this principle applied to the instant case. Petitioner claims that May was the "true owner," and respondent claims that petitioner was the "true owner" of the property. After a through examination of the record, we can find no evidence demonstrating any dominion and control over the property and income therefrom having been exercised by either petitioner or May which was inconsistent with his or her titular interest and accompanying legal rights. We conclude that the income from the jointly held properties is attributable one-half to petitioner and one-half to May. Edwin F. Sandberg, supra; Paul G. Greene, supra. Turning now to the properties held in May's name. Respondent contends that the income from these properties should be taxable to petitioner because he was the "true owner." Respondent relies mainly upon a sworn statement executed by petitioner in a condemnation proceeding wherein he stated that he had purchased three of the properties jointly held by himself *110 and May and two of the properties held in May's name. In view of the stipulation as to the parties in whose names the properties were held, and in absence of any evidence to the effect that the dominion and control over these properties was not in May, and that she did not in fact have the beneficial interest therein, we place little significance in petitioner's statement. After carefully examining the entire record and finding no evidence that May's title to the properties was a sham, or that any dominion or control was exercised over these properties inconsistent with the rights of May as titleholder, we conclude that the income from the properties in May's name is attributable to her. The capital gain on the sale of 230 Water Street is also taxable to May and we need not discuss petitioner's alternate argument that no gain was realized on that sale. Petitioner's alternate argument in relation to the rental income is that, if any income from the properties is attributable to him, no net income was realized therefrom. He contends that there were expenses in addition to the amounts set forth in the findings of fact. It is true that expenses incurred in the production of rental income *111 will ordinarily encompass more than interest, taxes and depreciation as allowed by respondent in the instant case. However, the evidence before us does not establish to our satisfaction that other expenses were in fact incurred by petitioner or May. May's uncorroborated and self-serving testimony on this point is, in our opinion, insufficient to rebut the presumptive correctness of respondent's determination. Even if we were convinced that added expenses were incurred by petitioner, the evidence before the court is too scanty for the purpose of allowing petitioner any added deductions even under the Cohan principle. Accordingly, petitioner's share of the net rental income from the properties shall be computed on the basis of the amounts of income and deductions as shown in the findings of fact. The next issue is whether petitioner incurred a deductible fire loss in 1947 as a result of the fire which occurred at petitioner's business location at 184 South Street. Respondent disallowed petitioner's claimed deduction "for the reason that no competent evidence or appropriate information was submitted in substantiation thereof." Petitioner seeks to deduct the loss under section 23(e)(1), Internal Revenue Code of 1939. *112 [2]Section 23(e)(1) must be read in conjunction with section 23(i)[3] which provides that the basis for determining the amount of deduction for such losses shall be the adjusted basis provided in section 113(b). [4] *113 The parties have stipulated that a fire occurred at petitioner's business location on February 17, 1947. It has been established that the interior of the building together with its contents was completely destroyed. The respondent's disallowance of the claimed loss was due to the failure of petitioner to prove the amount thereof. On brief, respondent states that there is no proof that the items claimed to have been destroyed did in fact ever exist. We cannot agree with respondent's contention that the items have not been shown to have been in existence. It is clear from the evidence presented that petitioner was in the paper packing business and that petitioner did have his business equipment *114 destroyed by the fire. However, the only evidence offered with respect to the amount of the fire loss was the uncorroborated and self-serving testimony of petitioner, who testified that the equipment had a value of about $6,000. Even if we assume the correctness of petitioner's valuation, it does not follow that he is entitled to a deduction for that or any other amount. The amount of the deduction for a loss sustained as a result of the destruction of property depends in this case upon the adjusted basis of the property as provided in section 113(b). Since petitioner is claiming that a loss was sustained, he has the burden of proving the amount of the loss. No evidence was placed in the record relative to the original cost of the property destroyed. Nor was there any evidence with regard to any capital improvements, the useful life of the property, or depreciation which had been allowed or was allowable with respect to the property. In the absence of such evidence, it cannot be determined that the adjusted basis of petitioner's equipment was more than zero. Thus he has failed to establish that he suffered a deductible loss and respondent's determination is sustained. The next issue *115 is whether a portion of the deficiencies for each of the years herein involved was due to fraud with intent to evade tax. Respondent has proved by clear and convincing evidence that petitioner failed to report a substantial amount of income from his waste paper business in each of the years in issue. This fact alone is strong evidence of fraud. Holland v. United States, 348 U.S. 121; Rogers v. Commissioner, 111 Fed. (2d) 987. Respondent has also proved that petitioner failed to report rental income during the years in issue. Petitioner has admitted that he failed to report a capital gain in 1946. Petitioner was indicted for income tax evasion for the years 1946 and 1947. He entered a plea of guilty with respect to the year 1947, and was sentenced to three months in prison. Petitioner argues that his failure to report the amounts of income set out above, was not due to an intent to evade tax, but due to his mental condition and a defective memory as a result of being subjected to repeated electric shock treatments. Two psychiatrists, who had examined petitioner in 1952 and 1953, testified with respect to petitioner's memory and general mental condition. Both stated that electric *116 shock treatments generally result in a temporary loss of memory and that repeated subjection to such treatments causes a general mental retrogression. However, both witnesses stated that a person suffering from a defective memory resulting from electric shock treatments and who kept records in the manner of petitioner would not fail to record and report large amounts of income while recording and reporting virtually all of his items of expense. They stated that such a person would probably make errors in recording and reporting items of income and expense indiscriminately. In the instant case petitioner failed to report large amounts of income, while he apparently reported, or took into account when he computed his commissions from brokerage sales, virtually all of his expenses. After carefully examining the evidence before us, we find the conclusion irresistible that a portion of the deficiencies for each of the years involved herein was due to petitioner's fraud with intent to evade tax. Accordingly, respondent's determination on this issue is sustained. It follows from what we have said above that the petitioner filed false or fraudulent returns with intent to evade tax for the *117 years 1946 and 1947 and that the deficiencies and additions to tax for these years are not barred by limitation. Section 276(a). [5]
The last issue is whether respondent properly determined additions to tax for each of the years in issue, as provided by sections 294(d)(1)(A) and 294(d)(2). Petitioner presented no evidence or argument on this issue. Accordingly, respondent's determination is sustained, subject to any adjustments made necessary by our decision on the above issues. Decision will be entered under Rule 50. Footnotes
*. The understatement of sales in 1944 is slightly in excess of the understatement shown on the notice of deficiency, $70,298.41, but on brief respondent states that he does not claim any increased deficiency by reason thereof.↩
**. See following schedule for expenses attributable to each piece of realty.↩
*. Erroneously stipulated to be $2,387.89. ↩
*. The word "not" deleted by an official order of the Tax Court, dated July 24, 1958 and signed by Judge Bruce. Originally read: "We are not satisfied…"↩
1. The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross profit. Gross profit percentage is the relationship between gross profit and gross sales.
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or * * *↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(i) Basis for Determining Loss. - The basis for determining the amount of deduction for losses sustained, to be allowed under subsection (e), * * * shall be the adjusted basis provided in section 113(b) for determining the loss from the sale or other disposition of property. ↩
4. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; * * *. (b) Adjusted Basis. - The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. (1) General Rule. - Proper adjustment in respect of the property shall in all cases be made - (A) For expenditures, receipts, losses, or other items, properly chargeable to capital account. * * *. (B) * * * for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount - (i) allowed as deductions in computing net income under this chapter or prior income tax laws, * * *↩
5. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *↩